STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT R. TUDDLES, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. EUGENE WATSON, DEFENDANT-APPELLANT.

Argued October 22, 1962—Decided December 3, 1962.

*Mr. Joseph F. Walsh* argued the cause for the defendant-appellant, Robert R. Tuddles.

*Mr. John E. Hughes* argued the cause for the defendant-appellant, Eugene Watson (*Mr. James M. Shashaty,* on the brief).

*Mr. Peter Murray,* Assistant Prosecutor of Essex County, argued the cause for the plaintiff-respondent, State of New Jersey (*Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney; *Mr. Peter Murray,* of counsel and on the brief).

The opinion of the court was delivered by

PROCTOR, J. The defendants, Robert Tuddles and Eugene Watson, both juveniles, were indicted along with two others on January 2, 1962, by the Essex County Grand Jury on a charge of murder. Thereafter the defendants made separate

motions before the Juvenile and Domestic Relations Court of Essex County, each seeking "an order of said Court directing that a hearing be held in pursuance of *N. J. S. A.* 2A:4-15." From the court's denial of their motions, each defendant appealed to the Appellate Division. While their appeals were pending in that court, we certified both proceedings on our own motion.

The charge of murder arose out of the defendants' alleged participation in an armed robbery of a real estate office in Newark on September 26, 1961, during the course of which an employee of the real estate office was allegedly shot and killed by one of the defendants' confederates. At the time of the alleged holdup, Tuddles and Watson were 16 and 17 years of age respectively. Because of their ages, a complaint charging the defendants with juvenile delinquency had been filed, prior to the indictment, in the Juvenile and Domestic Relations Court on October 9, 1961.

A summons, also dated October 9, 1961, was served upon Watson and his mother (his father was deceased), directing them to appear at the juvenile court on October 11 to answer "a complaint filed against Eugene for Juvenile Delinquency: Re: Bench Warrant—Larceny Auto & Adjournment & Preliminary Hearing — (MURDER)." The summons further stated: "The family may engage legal counsel if it desires so to do." On October 11 Watson, his mother, and his older sister appeared before the court. The court held a hearing which was preliminary in nature for the purpose of determining whether the case should be referred to the Essex County Prosecutor pursuant to *N. J. S.* 2A:4-15. That statute provides:

"If it shall appear to the satisfaction of the juvenile and domestic relations court that a case of juvenile delinquency as defined in section 2A:4–14 of this title committed by any juvenile of the age of 16 or 17 years, should not be dealt with by the court, either because of the fact that the person is an habitual offender, or has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society, then the court may

refer such case to the county prosecutor of the county wherein the court is situate.

Any juvenile of the age of 16 or 17 years may demand a presentment and trial by jury and, in such case, when this fact is made known to the court, such case, together with all documents pertaining thereto, shall be referred to the county prosecutor.

Cases so referred to the county prosecutor shall thereafter be dealt with in exactly the same manner as a criminal case."

The Watsons were not represented by counsel and the court did not offer to assign counsel to them if they were unable to retain counsel themselves.

At the hearing a list of previous charges of delinquency against one Eugene Watson and their disposition, in addition to the charge of homicide, was read to the defendant Watson. He admitted that he was the same Eugene Watson named in the past charges as well as the one charged with homicide in the present case.

At the conclusion of the hearing the court referred the case to the Prosecutor of Essex County to be dealt with as a criminal case pursuant to *N. J. S.* 2A:4–15 and *R. R.* 6:9–7. In the order of referral the court stated:

"It appears to my satisfaction that this boy has been charged with an offense of a heinous nature and that in addition thereto he is an habitual offender. Therefore, pursuant to Statute 2A:4–15 I am referring the case to you, since under the circumstances, the imposition of a sentence rather than the disposition permitted under the Juvenile and Domestic Relations Court Act may be necessary for the welfare of society.

The statute above referred to is also implemented by Supreme Court Rule 6:9–7, which requires that under these circumstances, upon referral to the Prosecutor's office the case should be handled as an adult criminal offense."

*R. R.* 6:9–7, on which the court relied, provides in pertinent part:

"The judge may at any time before final disposition refer the entire cause to the prosecutor of the county for criminal prosecution where the juvenile is over the age of 16 years, and is an habitual offender or the offense charged is of such a heinous nature that for

the protection of society the matter should be handled as an adult criminal offense. The hearing before this court shall then be construed as preliminary in nature to determine the course to be followed."

At the time of Watson's hearing and for some time thereafter, Tuddles had not been apprehended. Nevertheless, a preliminary hearing was held in his absence on November 8, 1961, before the juvenile court. Tuddles' father was present and testified that Tuddles had run away from home a year before, but was seen in Newark subsequent thereto. He suggested that Tuddles might have gone to Florida. He further testified that his son was the same Robert Tuddles who had appeared before the juvenile court before on charges of delinquency; that he had been placed on probation; and that he (the father) had previously signed a complaint to have Tuddles committed as an incorrigible. On the day following the hearing, the court referred the matter to the prosecutor to be dealt with as a criminal case. The order of referral set forth the same reasons as those given in the Watson case, quoted above. Four days later the defendant Tuddles was arrested in Elizabeth, New Jersey.

Thereafter, counsel was assigned to each defendant by the county court. On January 2, 1962 the Grand Jury returned indictments against both defendants for murder. On January 16, 1962 Tuddles moved before the juvenile court for an order directing that a hearing be held by that court pursuant to N. J. S. 2A:4-15 at which "the juvenile may be personally present to show reasons why the Juvenile Court should retain jurisdiction for the charge of murder presently pending against said juvenile." The court denied the motion on the ground that it lacked jurisdiction to hold such a hearing because it had previously referred the matter to the prosecutor, but the court noted its desire "to hold a preliminary hearing * * * if a proper Judicial authority refers the matter back to the Juvenile Court." In its oral opinion on this motion, the juvenile court indicated that it had referred Tuddles' case to the prosecutor because Tuddles was at large

and possibly out of the State at the time of the preliminary hearing, and hence a charge of an indictable crime rather than merely juvenile delinquency was required for extradition purposes, if such action had become necessary.

On January 23, 1962 Watson made a motion similar to that made by Tuddles and contended that he (Watson) was entitled to a new hearing because he was not represented by counsel nor was counsel assigned to him at the hearing on October 11, 1961. He further alleged that he had unwittingly acquiesced as to some of the previous charges of delinquency which were read to him at the hearing because he was then unaware that he could dispute them, but actually he was not the Eugene Watson named in some of the charges. This motion was also denied on the ground that the juvenile court lacked jurisdiction because of its previous referral of the matter to the prosecutor. The court further said it knew of no authority holding that "on the preliminary hearing [as in the present case] there must be assigned counsel," but if a proper judicial tribunal "makes such a finding this Court, of course, will be glad to hold a hearing with counsel present." The appeals now before us, as mentioned above, are from the denial of these motions.

The history of the treatment of juvenile delinquency in New Jersey was set forth in *State v. Monahan*, 15 *N. J.* 34 (1954), wherein it was made clear that insofar as conduct is treated as delinquent rather than criminal, the legislative approach is protective and rehabilitive and not punitive. The philosophy of the juvenile court law is aimed at rehabilitation through reformation and education in order to restore a delinquent youth to a position of responsible citizenship. *In re Lewis*, 11 *N. J.* 217, 224 (1953); see *N. J. S.* 2A:4–2; see, also, Paulsen, "Fairness to the Juvenile Offender," 41 *Minn. L. Rev.* 547 (1957). The statutory scheme is designed to permit the exercise of the powers of the State as *parens patriae*, for the purpose of rehabilitating youthful offenders, and not of punishing them for the commission of a crime. *State v. Monahan, supra*, 15 *N. J.*, at *p.* 38. In furtherance

of the strong public policy that juvenile offenders should be accorded separate consideration and treatment, both for their own benefit and for the welfare of society, the Legislature has provided, in *N. J. S.* 2A:4–14, that the Juvenile and Domestic Relations Court shall have exclusive jurisdiction of all cases of juvenile delinquency. Juvenile delinquency is there defined to include the commission by a child under 18 years of age of any act which when committed by a person of the age of 18 years or over would constitute a "felony, high misdemeanor, misdemeanor, or other offense." Under this definition the crime of murder is included within the exclusive jurisdiction of the juvenile court. *State v. Monahan, supra.* However, the Legislature has also provided an exception to the grant of exclusive jurisdiction, whereby a case of juvenile delinquency committed by any juvenile of the age of 16 or 17 years may be referred by the juvenile court to the county prosecutor, if the court is satisfied that the juvenile is "an habitual offender," or that the offense charged is of a "heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society." *N. J. S.* 2A:4–15 (set forth in full *supra*).

The decision under *N. J. S.* 2A:4–15 whether to retain the juvenile in the juvenile court under the *parens patriae* plan of procedure, or to refer the matter to the prosecutor to be dealt with as a criminal case, is left to the discretion of the juvenile court. The statute expressly provides that the court *may* refer a case to the prosecutor if it is satisfied that the criteria set forth in the statute have been met. On the other hand, the court may, in its discretion, decide to hear the case itself even though the charge would amount to murder if the case were referred to the prosecutor. Thus, in *State In re Steenback*, 34 *N. J.* 89 (1961), although a 17-year-old youth was charged in the juvenile court with delinquency on the ground that he, with others, assaulted and robbed a victim who died as a result of the assault, the court retained jurisdiction of the case to its conclusion.

The exercise of this discretion by the juvenile court takes place at a most important fork in the road in the juvenile's life; the court's decision will determine which path the juvenile must travel. If the court decides to refer the matter to be dealt with criminally, the juvenile, who could then be tried for murder, faces the possibility of the penalty of death. On the other hand, if the juvenile court decides to retain the juvenile in that court, the statutory policy is directed toward his rehabilitation for useful citizenship. Because of the grave importance of this decision to society as well as to the juvenile, we held in *State v. Van Buren*, 29 *N. J.* 548, 557 (1959), that fairness to both demands that there be a hearing to aid the court in reaching its decision. See also, *Goodlet v. Goodman*, 34 *N. J.* 358, 367 (1961).

In describing the nature of the above hearing, this court in *Van Buren* said:

"It is apparent from the preliminary nature of the jurisdictional decision and the many combinations of circumstances which may bear upon 'the welfare of society' that the range of the hearing which is appropriate will vary. The scope and detail of the hearing must be left to the sound discretion of the juvenile court. It must be kept in mind that there is no contested issue in the ordinary sense. Rather, the broad objective of the hearing is to enable the court to discharge its responsibility as the representative of the state. *To that end it should afford the juvenile an opportunity to be heard with respect to the facts which the court has received from the sources available to it and upon which it is inclined to relinquish jurisdiction.* Thus, if the basic question is whether the juvenile is 'an habitual offender,' the court should inform the juvenile of the information revealed by its investigation, to the end that he may admit or deny it. * * * If the cardinal circumstance is a charge of a heinous offense the court should reveal to the juvenile the charge as made by the State. The truth of the charge is not in issue; the question of fact is merely the existence of the charge. * * * The heinous nature of the charge may be such, as for example murder, that the court *may in its discretion* conclude that it needs no more for a decision. * * * *In all cases it should permit the juvenile to advance such relevant facts (apart from the issue of guilt) as he may wish to place before it.*" 29 *N. J.*, at *pp.* 557–558. (Emphasis added.)

From the above it is clear that the court in this case could not adequately fulfill the purposes of the required hear-

ing without the presence of Tuddles. The State contends that "no prejudice whatsoever ensued to the juvenile by virtue of his absence" from the hearing. It concedes that if the sole question were whether Tuddles was an habitual offender, then "as a matter of fairness" his presence would be necessary. But, it contends that the juvenile court also found that Tuddles had been charged with a heinous offense (murder) and that such in itself was a sufficient basis for referral. However, the absence of the juvenile from the preliminary hearing on the question of referral to the prosecutor cannot be passed over lightly, merely as not having caused prejudice to the juvenile. There is more at stake than the juvenile's interests; the interest of society as *parens patriae* depends upon the intelligent exercise of discretion by an informed judicial mind. This public interest cannot be compromised. It demands that a hearing be held with the juvenile present. See *State v. Van Buren, supra,* at *p.* 555. Moreover, we cannot say there was a lack of prejudice to Tuddles. He never had the opportunity "to advance such relevant facts" as he might have wished to place before the juvenile court to the end that the court might be persuaded that the *parens patriae* plan of procedure, rather than referral, was proper in his case. Even though the offense charged was of a heinous nature, the juvenile court still had discretion to handle the matter itself. See *State, In re Steenback, supra.*

The State also argues that the juvenile court lost jurisdiction when it referred the cause to the prosecutor, hence the court could not thereafter hold a preliminary hearing. While the referral was necessary and effective to give the criminal court jurisdiction to proceed, nevertheless the order of referral did not have the effect of depriving the juvenile court of jurisdiction to give the accused a hearing. In the interest of society and of the juvenile, "fairness to the parties involved in the light of the legislative objective" requires that the juvenile court grant a hearing at which the juvenile is present. See *Goodlet v. Goodman, supra,* 34 *N. J.,* at *p.* 367. Only at such a hearing can the court properly exercise

its discretion in determining whether the circumstances "may require the imposition of sentence [referral to the county prosecutor] rather than the disposition permitted by this chapter [*N. J. S.* 2A:4–1 *et seq.*] for the welfare of society." *N. J. S.* 2A:4–15. Proper application having been made in this case, the juvenile court had the power and the duty to hold a hearing in the presence of Tuddles on the question of referral. If the court thereafter decided that referral was warranted, the prosecutor could have continued with the pending criminal proceedings against Tuddles. There would be no jurisdictional defect in them, of course, since the criminal court acquired requisite jurisdiction when the matter was first referred. *Goodlet v. Goodman, supra,* 34 *N. J.,* at *p.* 368. On the other hand if, after the hearing, the juvenile court decided that the welfare of society would best be served by retaining the matter, and that court thereafter made a final disposition of the case, then the legislative scheme would require the dismissal of the criminal proceedings against Tuddles.

It is also contended by the State that the referral in Tuddles' case was justified on the ground that "there was abundant evidence of the unavailability of the juvenile at the time of the hearing on November 8, 1961, and his probable absence from the state." Unless the referral was ordered, it is argued, "the law enforcement officers of the State of New Jersey would be powerless to compel the return of the juvenile, even to attend a referral hearing," because "the provisions of the Extradition Act could not be invoked until he [Tuddles] was first charged with a crime." Whether a charge of juvenile delinquency is itself a sufficient basis for extradition proceedings, and whether a juvenile may be "charged with a crime" for extradition purposes without the juvenile court's having first referred the case to the prosecutor, are questions which are not before this court and consequently we make no intimation thereon. The sole issue here is whether the juvenile court must give a juvenile a hearing on the question of referral to the prosecutor, regardless of what steps were taken

to gain custody of the offender. We have already said above that such a hearing must be granted.

 Watson's appeal differs from Tuddles' case in that Watson was present at his preliminary hearing before the juvenile court. However, neither he nor his family was advised that the court would assign counsel to represent Watson if they were unable to secure counsel themselves. Watson contends that, pursuant to *R. R.* 6:9–1(b), counsel should have been assigned to represent him at that hearing. He argues that the failure of the juvenile court to advise him of his right to assigned counsel, and the court's failure to fulfill its obligation to assign him counsel, made the hearing a nullity.

*R. R.* 6:9–1(b) provides:

"Where the juvenile is charged with causing the death of a person, the prosecutor shall be notified and he shall conduct the examination and cross-examination of the juvenile and witnesses and the juvenile shall have the right to have counsel represent him and take part in the examinations. *If the juvenile is unable to secure counsel the court shall assign counsel to represent him.* The provisions of *Rule* 1:12–9, insofar as applicable, shall govern the assignment of counsel. In cases where the prosecutor appears a stenographic record shall be made of the testimony and the proceeding." (Emphasis added.)

The State distinguishes between a "disposition" hearing, *i. e.*, one for the purpose of determining whether the charge of delinquency has been sustained, and a preliminary hearing to determine whether the case should be referred to the prosecutor. It contends that *R. R.* 6:9–1(b) relates only to a disposition hearing and does not grant a right to assigned counsel in a preliminary hearing.

It is undoubtedly true that when the above rule was adopted, the drafters had in mind only a plenary disposition hearing where the juvenile is charged with delinquency through causing the death of a person. The preliminary hearing with which we are here concerned did not become a required part of our juvenile procedure until the *Van Buren* case. What has happened is that the rules have not kept

pace with this recent development in juvenile procedure, with the result that we are left without specific guidance with respect to the procedural aspects of the preliminary hearing. Although we agree with the State's contention that *R. R.* 6:9–1(b) does not apply to such a hearing, and although no constitutional right is involved, *People v. Dotson*, 46 *Cal. 2d* 891, 299 *P. 2d* 875 *(Sup. Ct.* 1956), we think it is appropriate that counsel be assigned on behalf of the juvenile to assist the court in arriving at a decision so meaningful to the juvenile and society. The preliminary hearing before the juvenile court on the question of referral is too important a matter to require a juvenile to handle it alone, where a referral could result in a penalty for murder. As said above, the welfare of society depends upon an informed decision by the juvenile court. In such a case, the juvenile's right to "an opportunity to be heard" on the facts before the court, and his right "to advance such relevant facts" as he may wish, in his effort to persuade the court to retain jurisdiction, would be of little avail if he did not have the assistance of counsel. Therefore, at a preliminary hearing in the juvenile court where the charge involves homicide, counsel should be assigned to a juvenile who is not represented by counsel of his own choice. Accordingly, our rules of procedure will be amended to provide for the assignment of counsel under these circumstances. In the meantime the assignment of counsel should be made by the Assignment Judge upon notification by the juvenile court that such assignment is necessary.

The State's contention that Watson was not prejudiced by the failure of the juvenile court to appoint counsel for him suffers from the same deficiencies as its similar argument concerning the absence of Tuddles from his hearing. Lack of counsel under these circumstances rendered Watson's hearing equally inadequate to fulfill the intended purpose of such hearing. The inevitable result of an inadequate preliminary hearing in the juvenile court is prejudice to both the juvenile and society. Therefore, Watson must be accorded a new

hearing at which he can be present and be represented by his assigned counsel.

The judgments of the Juvenile and Domestic Relations Court are reversed and the cases are remanded to that court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.