UNITED STATES of America ex rel. Spencer BROADDUS, E–9299, Appellant,

v.

A. T. RUNDLE, Superintendent.

No. 17935.

United States Court of Appeals, Third Circuit.

Argued Nov. 7, 1969.

Reargued March 5, 1970.

Decided July 21, 1970.

Raymond T. Letulle, Krusen, Evans & Byrne, Philadelphia, Pa., for appellant.

James D. Crawford, Asst. Dist. Atty., Philadelphia, Pa. (Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Argued Nov. 7, 1969

Before MARIS, SEITZ and STAHL, Circuit Judges.

Re-Argued March 5, 1970

Before HASTIE, Chief Judge, and FREEDMAN, SEITZ, VAN DUSEN, ALDISERT, ADAMS and GIBBONS, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

On August 15, 1958, a housing project guard in Philadelphia was found shot to death in the incinerator room. Three

days later, Spencer Broaddus, informed that the police were looking for him in connection with the homicide, appeared at a police station at midnight and submitted to an interrogation which lasted through the night. Toward morning, during a polygraph test, Broaddus admitted shooting the guard and implicated an accomplice, Murray Dickerson.[1]

That afternoon Dickerson also voluntarily surrendered to the police and was turned over to the homicide division for interrogation by five detectives. He first denied being at the housing project, but upon being read Broaddus' statement admitted his presence at the scene of the killing. He then gave his first written statement to the police in which he admitted scuffling with and hitting the guard. He insisted, however, that following this scuffle he ran out of the incinerator room and did not see the shooting.

A preliminary hearing for both Dickerson and Broaddus was held on the morning of August 20, 1958. Neither was represented by counsel and there is no indication that either was informed of the constitutional right to counsel or to remain silent.[2] Both were held for the grand jury and removed to the county prison.

Within a few hours a "bring-up order" was submitted by the detective bureau to a quarter sessions judge and routinely signed by the court.[3] It authorized the removal of the defendants from the county prison for further interrogation. Returned to City Hall, Broaddus was again interrogated and gave a second statement in which he admitted taking the guard's watch and

wallet after shooting him. Dickerson also signed a second statement confessing the theft of the guard's blackjack. It is clear that neither man was afforded the advice of counsel until some time after these second statements were obtained.

Upon arraignment, Broaddus entered a plea of not guilty and proceeded to jury trial in February, 1959. The second statement, in which the defendant had admitted killing the guard and stealing his watch and wallet, was introduced by the Commonwealth. Under the Pennsylvania felony-murder rule, the larceny admission was important to the first degree murder conviction sought by the prosecution.[4] Appellant contends that an objection to the introduction of the statement was made and overruled. The trial then proceeded to the conclusion of the Commonwealth's case, at which time Broaddus, following consultation with his attorneys, withdrew his plea of not guilty and entered a plea of guilty to murder generally.

There followed in April and May, 1959, a degree-of-guilt hearing before a three-judge state court which included the judge who had presided over the jury trial. At this hearing, no objection was raised by the defense to the introduction of both statements given by the defendant to the police. Moreover, the defendant himself took the stand and admitted shooting the guard and attempting to sell the guard's revolver to a friend later that evening. It is significant that although certain of Broaddus' testimony at this hearing was at variance with the statements already introduced by the Commonwealth, the defense

---

1. The Commonwealth contends that at this time he also admitted stealing the guard's hand gun. A careful review of the records of the various proceedings compels the conclusion that the information about the gun was not disclosed until later. (Notes, Transcript, Degree of Guilt Hearing, at 138–140.)

2. The statement which Broaddus had already signed did caution him that anything said might be used against him.

3. A copy of the "bring-up order" itself was not produced at any of the hearings and is not in the record. However, there is in the record a form of the bring-up order employed in the Philadelphia Quarter Sessions Courts. At the trial it was stated that such orders are destroyed six months after their issuance as a matter of administrative routine.

4. See Commonwealth v. Dickerson, 406 Pa. 102, 107, 176 A.2d 421, 423 (1962), which involved this same homicide.

made no attempt in its extensive examination of the defendant to attack the accuracy of the statements, other than a brief passing reference to the defendant's physical condition at the time the statements were given.

At the conclusion of the hearing the court found Broaddus guilty of murder in the first degree and sentenced him to life imprisonment. No direct appeal from the conviction and sentence was taken. In September, 1964, appellant applied for a writ of habeas corpus in the sentencing court but was denied relief. A petition under the state's Post-Conviction Hearing Act was subsequently filed, counsel was appointed, and following a hearing, relief was again denied. An appeal was taken from this decision to the Pennsylvania Supreme Court which affirmed in Commonwealth v. Broaddus, 428 Pa. 599, 239 A.2d 204 (1968). Broaddus then petitioned the district court for habeas relief, contending, as he had in the state courts, that his second statement to the police was wrongfully admitted at his degree-of-guilt hearing and that his guilty plea was invalidly entered. Counsel was appointed and after an evidentiary hearing the court below denied relief. This appeal followed, first before a panel of this court and now before the full court.

To support his contention that the second statement should not have been admitted, appellant advances a two-pronged constitutional argument: that his Fifth Amendment rights were violated because the statement was involuntarily made, and that his Sixth Amendment right to counsel was impugned because he was denied the assistance of a lawyer when the "bring-up order" issued from the quarter sessions judge.

Whether we may consider these arguments, however, depends on whether appellant's decision to plead guilty to the murder of the guard, arrived at after consultation with counsel, precludes an attack on the plea in these collateral proceedings. And notwithstanding an inclination to meet the arguments on the merits,[5] we are persuaded that appellant is foreclosed from such collateral attack. First, we must consider the effect of the impressive trilogy of the guilty-plea cases announced by the Supreme Court on May 4, 1970. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 763; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747.

In all of these cases, as witnessed by its language in *McMann*, the Court posed and answered the following question:

> After conviction on such a plea [of guilty], is a defendant entitled to a hearing, and to relief if his factual claims are accepted, when his petition for habeas corpus alleges that his confession was in fact coerced and that it motivated his plea? We think not if he alleges and proves no more than this.

397 U.S. at 768, 90 S.Ct. at 1447.

In this and other language in these opinions, the Court has made it clear that the validity of a guilty plea is not to be gauged by an examination of the admissibility of a confession or statement which may have, in part, prompted the plea. Rather, the inquiry must be directed to whether the plea was itself entered with the requisite understanding of its nature and consequences. And in this respect, the examination resolves into a determination whether the defendant received the effective assistance of counsel in reaching the decision to plead guilty: "[H]e is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." 397 U.S. at 774, 90 S.Ct. at 1450.

In singularly unrestricted language the Court said in *McMann* that a plea of

5. See the discussion of these issues in United States ex rel. Dickerson v. Rundle, 430 F.2d 462 (3 Cir. 1970) filed this same day where a majority of the court found similar arguments unpersuasive.

guilty in a state court is "not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney," 397 U.S. at 772, 90 S.Ct. at 1449 and that "whether a plea of guilty is unintelligent and therefore vulnerable * * * depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." *Id*. at 770–771, 90 S.Ct. at 1448–1449.

Here the professional conduct may not even remotely be construed as departing from the standards of competence set forth in United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3 Cir.1969); United States v. Cariola, 323 F.2d 180 (3 Cir.1963); and In Re Ernst's Petition, 294 F.2d 556 (3 Cir.1961).

Our inquiry therefore must then be directed to the question whether Broaddus' guilty plea was entered with the requisite understanding and intelligence. In this respect, the testimony of trial counsel in the district court habeas corpus hearing is most illuminating. It shows that, at the close of the Commonwealth's case, counsel undertook a thorough review of the evidence with his client, followed by an explanation of the available options and penalties which might result. There is no doubt that counsel's concern for the possibility of a death penalty occupied a significant role in these discussions. After reviewing the advice conveyed to appellant and in answer to a specific inquiry whether "Broaddus actually understood what he was doing when he pled guilty to murder generally," counsel responded:

> I have no doubt about it. I would not have stood with him at the bar of the court and I would not have permitted him to plead guilty if I had thought he did not understand. Of course, in the trial of the issue as to the punishment, and perhaps at other times, I pointed out to the court that Broaddus

was not a man of great intelligence, and that according to his own statement his formal education had been limited, but I felt convinced then, as I do now, that he understood what he was doing.

■ Moreover, we cannot ignore the fact that Broaddus' trial for murder was not his initial experience with criminal justice. The record indicates that appellant had been convicted of felonies on three separate occasions prior to this trial, two of these convictions resulting from pleas of not guilty and the third on a guilty plea. This relative familiarity with the machinery of criminal adjudication lends scant support to appellant's assertions that he did not comprehend his plea. We conclude, as did the district court, that appellant entered the plea with full understanding of its nature and consequences.

It may be contended, however, that even if appellant is precluded from impugning his guilty plea, he may still attack the admission of his statement at the degree-of-guilt hearing since under Pennsylvania law this was a separate proceeding. Our attention is directed to Commonwealth ex rel. Sanders v. Maroney, 417 Pa. 380, 207 A.2d 789, 790 (1965), where the court stated: "Of course, this does not mean that a defendant who has pleaded guilty to murder waives the right to object to the admission of improper evidence which will bear on the degree of guilt and the punishment to be imposed."

This court noted in United States ex rel. O'Connor v. New Jersey, 405 F.2d 632 (3 Cir.1969), that "[a] defendant in a criminal case is as entitled to a proper determination of the degree of guilt as he is to a determination of the question of guilt itself." It would seem, therefore, that there is some merit to the suggestion that *McMann* does not sweep as broadly as it seems. But the recognition of the separate status of the degree-of-guilt hearing also introduces factors which present equally formidable obstacles to our review of the admissibility of appellant's statement. Fore-

most among these is the requirement that an objection be raised to the introduction of the statement at the degree-of-guilt hearing. In *Sanders,* Pennsylvania's Supreme Court plainly indicated the need for such a contemporaneous objection:

> Since the voluntariness issue was not raised for determination by the court which heard the testimony on the plea, it is deemed waived and we need not pass upon it as a habeas corpus proceeding. Commonwealth ex rel. Fox v. Maroney, Pa. [417 Pa. 308], 207 A.2d 810 (1965). The principles governing the need for the timely raising of an issue apply equally to proceedings upon pleas of guilty as well as to trial proceedings.

207 A.2d at 790–791.

The United States Supreme Court has recognized that the contemporaneous objection rule serves a "legitimate state interest" and will under proper circumstances prevent the tardy assertion of error after trial. Henry v. Mississippi, 379 U.S. 443, 447, 85 S.Ct. 564, 13 L. Ed.2d 408 (1965).

In the present case, it seems abundantly clear that defense counsel did not object to the admission of this statement at the degree-of-guilt hearing because they had concluded that the statement was admissible. This conclusion was no doubt based in some measure on Broaddus' statement to his lawyers that he "voluntarily gave information." Under these circumstances, we hold that even if the *McMann* trilogy does permit an inquiry into the admissibility of the statement, the failure to raise objection to its admission at the degree-of-guilt hearing was a deliberate by-pass of the state procedures available to test admissibility in the first instance and now prevents its consideration in a collateral proceeding. Fay v. Noia, 372 U.S. 391, 434, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

In sum, we hold that because appellant was assisted by competent counsel, our inquiry into the validity of the guilty plea is limited by the *McMann* trilogy to the question whether the plea itself was intelligently and voluntarily entered. Thus, even assuming a prior involuntary confession, the plea is not defective if, as we have found here, it was given with the necessary understanding and volition. Moreover, even if the *McMann* cases do not foreclose a collateral challenge to the admission of an allegedly coerced confession at a degree-of-guilt hearing following a guilty plea, we have determined that appellant is precluded from pressing the attack in these proceedings because he failed to timely raise the issue as required by Pennsylvania law.

While Judge Seitz concurs generally in the opinion of the court he believes that, whether or not there was a deliberate by-pass of state remedies by a failure of counsel to object to the offer of the second statement at the degree-of-guilt hearing, the statement was admissible because it was voluntarily given when judged by the totality of the circumstances standard.

ADAMS, Circuit Judge, concurs in the result.

The judgment of the district court will be affirmed.