Herbert F. SMITH, Jr., Appellant,

v.

Howard YEAGER, Warden, New Jersey State Prison.

No. 17816.

United States Court of Appeals, Third Circuit.

Submitted Oct. 18, 1971.

Decided April 26, 1972.

---

Herbert F. Smith, pro se.

David Noah Dubrow, Asst. Prosecutor, Newark, N. J., for appellee.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

When appellant appeared in 1955 at a juvenile certification hearing, case law, as then articulated, did not mandate assistance of counsel. This appeal requires us to decide whether a subsequent entry of a counseled plea of guilty as an adult offender forecloses a collateral attack on that plea based on later pronouncements of the courts requiring the presence of counsel at juvenile certification proceedings.

Represented by counsel whose competence is not challenged, appellant, in May, 1955, entered a plea of *non vult* to

a charge of murder in a New Jersey court.[1] He was sentenced to life imprisonment. Eleven years later he sought federal habeas corpus relief, alleging a Sixth Amendment deprivation of counsel at the juvenile court proceeding which certified that he be tried as an adult offender. N.J.S.Anno. 2A:4–14 and 15. The habeas court granted a conditional writ, giving the state an opportunity to hold a second certification hearing with court-appointed counsel. Appellant has appealed from the result of this second certification hearing which was conducted in 1968 before the same juvenile court judge who heard his case in 1955. The district court found that the second hearing satisfied the requirements it had imposed.

Although we concur in the result reached by the district court, we do it for other reasons. We are persuaded that the writ of habeas corpus should have been denied for the reasons set forth in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

We do not reach the question of the adequacy of counsel at the second certification hearing because in our view the remand for this purpose was not required. The *McMann* trilogy held that where there was a counseled plea of guilty, the relator was not, without more, entitled to a hearing on a petition for writ of habeas corpus alleging that the plea was entered because of a prior coerced confession.

With one exception, this court has unswervingly followed the mandate of these cases.[2] The only deviation appeared in the troublesome case of Bannister

---

1. The New Jersey Supreme Court recently has reaffirmed the efficacy of a *non-vult* plea. State v. Funicello, 60 N.J. 60, 286 A.2d 55 (1972).

2. United States ex rel. Davis v. Yeager, 453 F.2d 1001 (3d Cir. 1971), n. 1A, and concurring opinion therein; United States ex rel. Kidd v. Commonwealth, 453 F.2d 247 (3d Cir. 1971); United States ex rel. Johnson v. Russell, 444 F.2d 1177 (3d Cir. 1971); United States ex rel. Baity v. Maroney, 435 F.2d 1254 (3d Cir. 1970); United States ex rel. Black v. Russell, 435 F.2d 546 (3d Cir. 1970); United States ex rel. Broaddus v. Rundle, 429 F.2d 791 (3d Cir. 1970).

v. United States, 446 F.2d 1250 (3d Cir. 1971) (*en banc*), where a majority of the court, for various reasons, held that the trilogy would not apply to a prosecution under 26 U.S.C. § 4744(a) (2) where the plea was entered before *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), which announced that a timely and proper assertion of the privilege against self-incrimination was a complete defense to the prosecution. The plurality opinion of Judge Biggs emphasized that constitutional rights created by *Leary* could not be waived in advance, because the *Leary* right was not procedural but constituted a total defense. Judge Gibbons' plurality opinion, suggesting that *Leary* in reality invalidated the statute under which he was indicted, stated:

> We do not quarrel with the proposition that every change in the procedural law governing the criminal justice system cannot be the means for casting wholesale doubt upon the vast bulk of criminal judgments which result from guilty pleas. But the *Brady, McMann* and *Parker* cases involved changes in the law which were essentially procedural. They did not involve petitioners confined as a result of a guilty plea to an offense under a statute later held to be unconstitutional as applied to them and their conduct.

446 F.2d at 1264.[3]

Thus, whether we apply the general rule of the guilty plea trilogy depends on the quality of the right sought to be asserted in the collateral attack. Does the newly-expressed right affect, what Judge Biggs in *Bannister* termed,

"the integrity of the conviction," 446 F. 2d at 1255, or does it constitute what Judge Gibbons described as an "essentially procedural" change in the law, 446 F.2d at 1264?

We are persuaded that the requirement of counsel at a juvenile certification hearing constituted a purely procedural right. The newly-conferred right to counsel carries no guarantee of a change in the result of the certification hearing. Indeed, putting aside the argument of inadequate counsel, the same judge who certified appellant as an adult offender in 1955 reached the identical conclusion following the second certification hearing thirteen years later in October, 1968. Moreover, the opportunity to have a juvenile court hearing is afforded by a New Jersey statute; it is not mandated by the federal constitution. Indeed, even if appellant were to be tried as a juvenile, the only practical distinction would be the difference in sentence and the opportunity of parole. Compare N.J.S.Anno. 2A:4–37 (Juvenile) with N.J.S.Anno. 30:4–123.11 (Life Sentence: Adult). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action. *Brady, supra,* 397 U.S. at 757, 90 S.Ct. at 1473.

In sum, we find it difficult to accept the hypothesis that Fifth Amendment protection against self-incrimination, so basic to the Bill of Rights, may be waived by a properly counseled guilty plea, but that a Sixth Amendment *right* to counsel at a hearing that simply deter-

---

3. In dissent, Judge Hastie said:
   I think it is inadequate knowledge and comprehension of the situation at the time of pleading, and that alone, that now permits a guilty plea to be attacked collaterally. In the *Brady* opinion, the Supreme Court rationalized its decision by saying that "a voluntary plea of guilty intelligently made in the light of the *then applicable* law does not become vulnerable because later judicial decisions indicate that the plea

rested on a faulty premise." 397 U.S. at 757, 90 S.Ct. at 1473 (italics added). That language, used in a case where a plea was entered without anticipation of a future constitutional holding that would have removed the impelling reason for the plea, seems to cover the circumstances of the present case. I think we are bound by it, though we may wish that the rule were otherwise. 446 F.2d at 1266.

mines which of two judicial forums may try a defendant is a more significant right; a right of such fundamental importance that it can survive a later counseled plea of guilty.

■ Accordingly, we hold that Smith's plea of guilty "intelligently made in the light of the then applicable law [did] not become vulnerable because [of] later judicial decisions," *Brady, supra,* which conferred a right to counsel at juvenile certification hearings.

In the view we take, it does not become necessary to address ourselves to the substantive considerations associated with the right to counsel. Although we do not meet the issue, it is not inappropriate to observe, however, that the district court's order could have been justified on the theory of limited retroactivity of the recently enunciated right to counsel requirement at juvenile certification proceedings. United States ex rel. Turner v. Rundle, 438 F.2d 839 (3d Cir. 1971). In *Turner* there is at least the suggestion that the requirement be given limited retroactivity. Although relying on the reasoning of Kemplen v. State of Maryland, 428 F.2d 169 (4th Cir. 1970), which accorded full retroactivity, we did not go as far, explicitly limiting retroactivity to a hearing "conducted after the decision in [United States v.] *Kent,*" [383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)], 438 F.2d at 842. See also, Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed. 2d 202 (1972), denying any retroactivity to the requirement of counsel at an adult preliminary hearing now mandated by Coleman v. Alabama, 399 U.S. 1, 90 S. Ct. 1999, 26 L.Ed.2d 387 (1970). A

persuasive argument could be made that it is inconsistent to accord full retroactivity to the right to counsel at a juvenile certification proceeding when it is denied to an adult defendant at a preliminary hearing. *Kent* was decided in 1966; the certification hearing in question here was held in 1955.

In any event, for the considerations set forth in the McMann trilogy, the order of the district court denying the writ of habeas corpus will be affirmed.

MAX ROSENN, Circuit Judge (dissenting).

The majority finds that this appeal is foreclosed by the Supreme Court's decision in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). I cannot agree. It is my opinion that the denial of appellant's right to counsel at his hearing on the waiver of juvenile court jurisdiction is properly before us. Once I face that question, I conclude that appellant had a right to counsel, and that the State of New Jersey failed to comply with the mandate of the United States District Court in providing such assistance to Smith.

Smith was sixteen and a half years of age when he was apprehended. Under New Jersey law, N.J.S.A. 2A:4–15, the juvenile court had to determine whether he should be treated as a juvenile or as an adult offender. The law provided that the juvenile court may refuse to take a case if the juvenile is an habitual offender, or has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the rehabilitative disposition permitted by New Jersey.[1]

---

1. N.J.S.A. 2A:4–14 and 15, which are the two relevant sections of the New Jersey law governing jurisdiction of the New Jersey juvenile courts, read as follows:

"2A:4–14. Except as stated in section 2A:4–15 of this title, the juvenile and domestic relations court shall have exclusive jurisdiction to hear and determine all cases of juvenile delinquency. . . . ."

"2A:4–15. Cases referred to county prosecutor; demand for jury trial

"If it shall appear to the satisfaction of the juvenile and domestic relations court that a case of juvenile delinquency as defined in section 2A:4–14 of this title committed by any juvenile of the age of 16 or 17 years, should not be dealt with by the court, either because of the fact that the person is an habitual

New Jersey considers this hearing a vital step in the administration of justice because it involves the decision whether to treat the youthful offender in a protective fashion, *parens patriae*, or whether to deal with him as an adult. State v. Tuddles, 38 N.J. 565, 186 A.2d 284 (1962). The state supreme court has concluded that the character of the decision is such that the matter should not be disposed of without a hearing that will explore all relevant questions in the interests of both the youth and society. State v. Van Buren, 29 N.J. 548, 150 A.2d 649 (1959).

While the waiver of juvenile court jurisdiction is within the discretion of the juvenile judge, State v. Tuddles, supra, 186 A.2d at 287–288; State v. Smith, 32 N.J. 501, 161 A.2d 520, 539 (1960); State v. Van Buren, supra, 150 A.2d at 654, the hearing takes into account a wide variety of factors concerning the nature of the offense, the economic and social background of the defendant, and the alternative strategies for rehabilitation. State v. Van Buren, supra, at 654–655. Although the judge may conclude on the basis of the charge alone that the juvenile should be bound over to the regular criminal courts, State v. Smith, supra, 150 A.2d at 539, the nature of the charge does not necessarily deprive the juvenile of the right to pre-

sent relevant information for retention of juvenile court jurisdiction. The binding over procedure is not necessarily automatic even though the juvenile is an habitual offender or the charge against him is murder. State v. Loray, 46 N.J. 179, 215 A.2d 539, 546 (1965).[2]

In this case, Smith did not have a lawyer at his hearing on waiver of juvenile jurisdiction. The case was referred to the prosecutor who charged him with murder. On May 17, 1955, after a brief conference with appointed counsel, Smith retracted his prior plea of not guilty and entered a plea of non vult.[3] He was sentenced to life in prison.

Eleven years later, in 1966, Smith brought a habeas corpus petition in the United States District Court for New Jersey alleging that he had been deprived of counsel at his waiver of jurisdiction hearing in violation of his right to counsel under the sixth amendment, as applied to the states by the fourteenth amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). New Jersey had previously determined, although after appellant had been convicted, that as a matter of proper administration of its courts counsel was required at such waiver of jurisdiction hearings. State v. Tuddles, supra, 186 A.2d at 290. District Judge Coolahan in an exhaustive and cogent opinion

---

offender, or has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society, then the court may refer such case to the county prosecutor of the county wherein the court is situate. . . .

"Cases so referred to the county prosecutor shall thereafter be dealt with in exactly the same manner as a criminal case."

2. In this respect New Jersey juvenile procedure differs from the law in at least one other state in our circuit. In Pennsylvania, a juvenile indicted for murder who is over the age of 14 must be proceeded against in criminal court. As a result, the waiver of jurisdiction is automatic and the hearing is in the nature of

a preliminary hearing. United States ex rel. Walker v. Maroney, 444 F.2d 47, 48 n. 3 (3d Cir. 1971). *Contrast*, United States ex rel. Turner v. Rundle, 438 F.2d 839 (3d Cir. 1970).

3. New Jersey does not permit a plea of "guilty" in a murder prosecution. However, it does permit a plea of non vult or nolo contendere. In the case of such a plea, the sentence imposed is life imprisonment or the same as that which would be imposed upon a conviction of murder in the second degree. N.J.S.A. 2A:113–3. Although the recent decision of the New Jersey Supreme Court in State v. Funicello, 60 N.J. 60, 286 A.2d 55 (1972) barred the imposition of the death penalty on those who elected to go to trial, it concluded that a plea of non vult would not be impaired by its decision.

went further in this case. He concluded that the immense importance of the hearing was a critical phase of the proceedings. Therefore, counsel was required under Gideon v. Wainwright, supra, and Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

In a supplemental order filed April 11, 1967, Judge Coolahan granted Smith's application for habeas corpus, but stayed its effectiveness "for a reasonable period pending the determination of the Essex County Juvenile Court as to whether petitioner's case was properly referred to the County Prosecutor where petitioner was tried, convicted and sentenced as an adult offender. If it is determined that petitioner's case was properly referred to the County Prosecutor, petitioner will be remanded to the State Correctional Institution to serve the remainder of his sentence." The state did not appeal from this order.

It is at this point that Smith's present complaint arises. The Juvenile Court was not notified by the Prosecutor's Office of the order until July 29, 1968, more than one year after the supplemental order, and a hearing was not held until October 10, 1968, four days before the district court was to determine if its mandate had been carried out.[4] The Juvenile Court did not appoint counsel to represent Smith. Instead, in contravention of N.J.R.R. 5:3–3(a) the Prosecutor's Office, rather than the court, asked the Public Defender to represent Smith at the hearing, although that office had no legal authority to do so. Notwithstanding, a member of the Public Defender's staff was present at the October 10th hearing, even though it seems he had never before spoken to Smith. Although Smith realized that the Public Defender did not represent him, he asked the Public Defender to tell the court that he believed that it was too late for them to do anything be-

cause of the fast approaching hearing before the district court on October 14th. Smith made no further statements and understandably presented no evidence.

Despite the district court's order, the Prosecutor maintained at the hearing that Smith had been given all his constitutional rights in 1955, and that in any case the charge of murder, as a heinous offense, was sufficient grounds for referral of the matter to the criminal courts. The juvenile judge, who was the same individual who had heard the original case thirteen years before, agreed on both issues, finding that Smith had been properly referred to the prosecutor. On the basis of this hearing, the district court on October 30th, 1968, found that the state had complied with his order, that Smith had been properly referred to the county prosecutor, and denied the petition for habeas corpus.

Early in 1969, a panel of this circuit granted Smith's motion for probable cause and leave to proceed in forma pauperis. Because of the extreme tardiness of the Essex County Prosecutor's Office in filing its brief in this case, we only now review these proceedings, which I find in no way meet the minimum standards for the hearing to which Smith was entitled.

## I. WAIVER

The majority agrees with the Seventh Circuit's decision in Smith v. Cady, 452 F.2d 141 (7th Cir. 1971), that because of his non vult plea, Smith is precluded from collaterally attacking any procedural errors in his waiver hearing on the basis of the Supreme Court's decisions in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and Parker v. North Carolina, 397 U.S.

---

4. On September 25, 1968, appellant Smith filed a motion in the district court directing the Prosecutor for Essex County to show cause why Smith should not be admitted to habeas corpus because nothing had been done in eighteen months to provide him with the hearing Judge Coolahan's order required.

790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). All of the petitioners in those cases were challenging their guilty pleas as involuntary. In *McMann* a defendant contended that he should be able to contest his guilty plea, assertedly compelled by a threat to use an illegally obtained confession at trial. If the confession was in fact coerced and central to the prosecution's case, the Supreme Court reasoned that the defendant should have been willing to go to trial on the question. When on the advice of competent counsel the defendant decided to forego a judicial decision on admissibility, he had, in effect, knowingly waived contesting the issue and asserting his federal rights. Having made a free and voluntary choice not to challenge the state's case, the guilty plea was untainted by any coercion. Thus, the Court reasoned that a defendant should not be allowed to correct his tactical error later when it is discovered that the evidence could not have been properly admitted.[5]

In this case, appellant is not asserting his innocence or a coerced guilty plea. The error he is challenging did not involve any element of trial in the adult court. Putting the state to its proof at trial would not have given the appellant a way to raise the issue. Neither is there an election between rights, McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), nor an attempt to correct a tactical er-

ror committed with the advice of counsel.[6] Appellant asserts only that he should have been treated as a juvenile. *Cf.* Bannister v. United States, 446 F.2d 1250, 1253–1255 (3d Cir. 1971) (opinion of Judge Biggs); United States v. Ligouri, 430 F.2d 842, 848–849 (2d Cir. 1970), cert. denied, 402 U.S. 948, 91 S. Ct. 1614, 29 L.Ed.2d 118 (1971). It seems a fruitless waste of judicial time to require a trial where the issue of guilt is not in question. United States v. Dorsey, 449 F.2d 1104, 1108 n. 18 (D. C. Cir. 1971).

Even if not barred by *McMann*, the state would still construe defendant's non vult plea entered with advice of counsel as an effective waiver of any defects in the binding over hearing. While that argument persuaded the Supreme Court of New Jersey in Goodlet v. Goodman, 34 N.J. 358, 169 A.2d 140, Cert. denied, 368 U.S. 855, 82 S.Ct. 92, 7 L.Ed.2d 52 (1961),[7] the Supreme Court of the United States in Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962), citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), held the issue of waiver of constitutional rights to be a federal question and directed us to ascertain whether there has been an "intentional relinquishment or abandonment of a known right or privilege." *See also,* United States ex rel. Snyder v. Mazurkiewicz, 413 F.2d 500, 502 (3d Cir. 1969). Ap-

---

5. A review of Brady and Parker as well as McMann reveals all three cases were based on the conclusion that appellants assessed the evidence against them and found that it was in their interest to plead guilty. Their admissions of guilt were not coerced by the alleged illegal conduct and the integrity of the pleas could not be questioned. That situation is not applicable here.

6. Smith's original habeas corpus petition did allege his confession was coerced, but the district court did not agree, and this issue is barred by McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970).

7. Goodlet v. Goodman ruled that a 17-year-old boy who pleaded guilty to a murder charge after being bound over in an *ex parte* proceeding without a hearing could not collaterally attack his plea, when he had not raised the issue at trial. However, the later decision in State v. Loray, 46 N.J. 179, 215 A.2d 539, 545–546 (1965), which dealt with a case that had gone to trial, has cast some doubt upon Goodlet's holding, even though it agrees that defective referrals should be attacked as soon as possible. Whether or not a defendant goes to trial should not affect his ability to raise the question of an improper waiver of jurisdiction hearing because any such objection should properly be raised before trial begins.

plying such a test, we cannot find a waiver. Acuna v. Baker, 418 F.2d 639, 641 (10th Cir. 1969) (Murrah, C. J., dissenting).[8] It would have required Delphic vision on the part of counsel in 1955 to have foreseen decisions of the Supreme Court of the United States in Gideon v. Wainwright, supra, and the Supreme Court of New Jersey in State v. Tuddles, supra. There was not even a right in New Jersey to a formal waiver hearing with defendant present until 1959. State v. Van Buren, supra. Thus, counsel could not have foreseen the right to assistance of counsel in the exercise of his ordinary professional acumen. Acuna v. Baker, supra, 418 F.2d at 641. Necessarily, a sixteen year old boy could not, in such circumstances, be said to have intelligently and understandingly rejected an offer of counsel. Carnley v. Cochran, 369 U.S. 506, 514–516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

The majority attempts to distinguish our decision in Bannister v. United States, supra, because the alleged constitutional infirmity in that case amounted to a total defense to the prosecution while in this instance they construe the defect to be a mere "procedural error." That rationale exalts the facts in McMann and gives them form and substance not connoted by the holding. McMann assessed only whether there was a knowing and intelligent waiver of certain rights. The fact that they were procedural is not important. The fact that must be kept in mind is that the rights could have been asserted at trial and were not only because of the guilty plea. Had Smith proceeded to trial he would in no way have challenged the erroneous action of the juvenile court. Relinquishing the right to trial did not impliedly or otherwise waive his right to an appropriate hearing in the juvenile court.

Further, as Judge Biggs points out in *Bannister,* a guilty plea did not vitiate the opportunity to raise a constitutional challenge where the alleged error undermined any valid interest the Government may have had in punishing the defendants. Much the same thing may be said in this case. If the appellant was improperly bound over to adult court, the state had no valid interest in punishing him as an adult. It would defeat the purpose of the statutory scheme New Jersey had constructed.

In United States ex rel. Turner v. Rundle, 438 F.2d 839, 843 (3d Cir. 1971), this court reaffirmed that "every presumption against waiver is to be indulged." The majority seriously undermine that rule by construing *McMann* well beyond its scope and reasoning. By so doing, they deny criminal defendants the rights Fay v. Noia, supra, sought to assure them.

## II. RIGHT TO COUNSEL

On the merits, I believe the thrust of our decision in United States ex rel. Turner v. Rundle, supra, and the Fourth Circuit's decision in Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970); cf. Haziel v. United States, 131 U.S.App. D.C. 298, 404 F.2d 1275 (1968), compel

---

8. Acuna v. Baker, 418 F.2d 639 (10th Cir. 1969), found waiver in a case analogous to ours. However, the majority's opinion is distinguishable from the instant case because the New Mexico juvenile proceedings under review provided for a hearing, although the state would not appoint counsel. When counsel was appointed in the adult court, the Tenth Circuit reasoned that he should have asked for a new waiver hearing, as was his right under New Mexico law. The situation in New Jersey in 1955 is not analogous because there was no right to a formal hearing. *See* State v. Van Buren, 29 N.J. 548, 150 A.2d 649 (1959). However, to the extent that such factual differences cannot reconcile these opinions, I note that the majority in that case did not find a waiver based upon the exacting standards of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962). Chief Judge Murrah in dissent applied that test and found no waiver. Therefore, to that extent I find that I cannot adopt the reasoning of the majority of the Tenth Circuit, but must agree with Chief Judge Murrah's dissent. *See generally,* Developments in the Law-Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1106–09 (1970).

us to find that counsel was required in the waiver of juvenile jurisdiction hearing.[9] Suffice it to say that the most critical element in the waiver hearing is that all relevant information concerning the background and prospects of the juvenile be brought before the court. Otherwise, it cannot make an informed judgment on the complex question of whether the youth should be treated as a delinquent or as an adult. The Supreme Court in In re Gault, 387 U.S. 1, 38 n. 65, 87 S.Ct. 1428, 1450, 18 L.Ed.2d 527, (1967) quoting from the National Crime Commission Report agreed that:

> [I]n all cases children need advocates to speak for them and guard their interests, particularly when disposition decisions are made. It is the disposition stage at which the opportunity arises to offer individualized treatment plans and in which the danger inheres that the court's coercive power will be applied without adequate knowledge of the circumstances.

The same is true at the waiver hearing because counsel may persuade the juvenile court the interests of the community are better served by retention of its jurisdiction. Haziel v. United States, supra; cf. Mempa v. Rhay, 389 U.S. 128, 135, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).[10]

## III. EFFECTIVENESS OF COUNSEL AT THE HEARING

When the district court directed a hearing on the waiver of jurisdiction by the juvenile court it obviously intended that the right to counsel meant more than the mere presence of a lawyer in the hearing room. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). As Judge Winter has held in Coles v. Peyton, 389 F.2d 224, 226 (4th Cir. 1968):

> Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused.

Smith in fact had no lawyer at all at the hearing. The public defender stated that he could not represent him, and made no attempt to do so during the hearing. Even if I concluded that Smith had a lawyer, I could not under any circumstances find that there was effective assistance of counsel. Apparently the public defender did not see Smith before the hearing, and he did not have the opportunity to do the necessary investigation required for the hearing.

The lack of counsel is exacerbated in a waiver of juvenile jurisdiction hearing because it is extremely important that a lawyer be thoroughly familiar with his client's background, habits, personality, and prospects for the future because it is these facts which are critical for the juvenile court's decision as to whether or not it should retain jurisdiction.

The Supreme Court of New Jersey has made it abundantly clear, State v. Tuddles, supra, 186 A.2d at 290; State v. Van Buren, supra, 150 A.2d at 654, that even when a defendant is facing a murder charge, the factors a lawyer may

---

9. While New Jersey recognized the right as a matter of proper procedure in State v. Tuddles, 38 N.J. 565, 186 A.2d 284 (1962), a subsequent lower court decision in New Jersey may imply that the state now recognizes that the right to counsel at the waiver hearing has a constitutional dimension. In re State in Interest of H. C., 106 N.J.Super. 583, 256 A.2d 322, 326 (1969).

10. Because of the disposition of this case, I see no reason to discuss at any length the question of retroactivity. Suffice it to say that under the theory of retroactivity as announced in Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), this right requires retroactive application. Kemplen v. Maryland, 428 F.2d 169, 175–178 (4th Cir. 1970); cf. Mordecai v. United States, 137 U.S.App.D.C. 198, 421 F.2d 1133, 1138 (1969), cert. denied, 397 U.S. 977, 90 S.Ct. 1098, 25 L.Ed.2d 272 (1970).

bring out at the hearing may persuade the juvenile court to retain jurisdiction of the case and treat the accused under the protective standards of the juvenile law. It is this discretionary element which the juvenile judge at the second hearing in 1968 failed to understand. He seems to have concluded that because Smith had been charged with a heinous offense, the law required the defendant be treated as an adult. That reading is an improper interpretation of N.J.S.A. 2A:4-15. While a juvenile judge may bind over a 16 or 17 year old simply on the basis of a charge, State v. Loray, supra, 215 A.2d at 546; State v. Van Buren, supra, 150 A.2d at 654, he need not if convinced by other information that it would be in the best interests of the defendant and society that he be treated as a juvenile delinquent. The decision of the juvenile judge in 1968, both on the constitutional ground and on the substantive ground, seemed to have been predicated on the assumption that nothing that a lawyer might have said would have altered the result. That implied ruling is at direct variance with New Jersey law as I interpret it.

On the basis of the foregoing, I would find that Smith was denied the hearing properly granted him by the district court. The majority minimizes the relief we could give appellant. In fact, a decision finding Smith should not have been treated as an adult would mean he would be subject to rehabilitation. As a practical matter, it might operate to void his conviction or at least make him eligible for parole many years earlier.[11]

11. Treatment as a youthful offender would make Smith eligible for immediate parole under N.J.S.A. 2A:4-37 rather than requiring him to wait until 1980, when he will have served the minimum twenty-five years required by N.J.S.A. 30:4-123.11. Further, if treated as a juvenile, he must be admitted to parole as soon as "he has been rehabilitated for useful citizenship under standards consonant with the philosophy of the treatment of juvenile offenders [citation omitted]. Considerations of punishment or deterrence to others pertinent in deciding whether an adult criminal should be paroled have no place in [this] situation." In re Smigel-

ski, 30 N.J. 513, 154 A.2d 1, 8 (N.J. 1959). There is also the possibility that although the adult courts were not absolutely barred from hearing Smith's case, the New Jersey courts may determine that as a matter of state law, an adult court was deprived of jurisdiction over a person improperly referred to it. Cf. State v. Monahan, 15 N.J. 34, 104 A.2d 21 (1954). In such a case, Smith could be retried in juvenile court because in New Jersey the juvenile courts can retain jurisdiction over a person who committed an offense while a juvenile even when he is no longer a minor. In re Smigelski, supra.