749 A.2d 902

STATE OF NEW JERSEY IN THE INTEREST OF G.S.

Superior Court of New Jersey
Chancery Division
Family Part
Camden County

Decided January 4, 2000.

*Cynthia Hall Miller*, Deputy Attorney General, for the New Jersey Department of Human Services, Division of Youth and Family Services.

*Barry Chatzinoff*, (Weinberg, McCormick, Chatzinoff and Zoll), Counsel for Lower Camden County Regional High School District Number One.

*Diane Marano*, Assistant Prosecutor, Office of the Camden County Prosecutor.

*Harold Katz*, A.D.P.D., Office of the Public Defender, Counsel for G.S.

COOK, J.S.C.

## *INTRODUCTION*

This case presents issues of first impression concerning the constitutional right of juveniles who have been adjudicated delinquent to continue to receive public education, after being expelled from school. Specifically, does a juvenile expelled from public school for conduct for which he was also adjudicated delinquent, thereby forfeit his right under Article 8, § 4, para. 1 of the New

Jersey Constitution to a free public education? Does his expulsion relieve the State of its obligation to provide him any further education? Also, does the Superior Court, Chancery Division, Family Part have subject matter jurisdiction to decide such issues and to order the State to provide him with an education?

Because this is the age of increasingly "zero tolerance" of certain types of school-related offenses, commission of which results not only in court-adjudication of delinquency but automatic expulsion of the miscreant student by the school board, as in this case, the question of the juvenile offender's constitutional right to receive any further public school education correspondingly recurs with greater frequency. Thus, the jurisdictional and substantive issues presented in these cases are of such import and far-reaching consequence as to warrant judicial determination.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 1999, several students at Edgewood Senior High School participated in the placement of a false bomb threat call to the school, which led to the evacuation of all students, teachers and personnel. One student made the call from the school cafeteria using a cell phone, while several other students including G.S., then age 15, acted as "lookouts". They were charged with violating *N.J.S.A.* 2C:33–3a, making a false public alarm. At trial, G.S. was adjudicated delinquent. Since this was a fourth-degree offense, and G.S. was a first-time offender with no prior history of delinquency, there was a presumption of non-incarceration. *N.J.S.A.* 2A:4A–44b(1). His school attendance was consistent. His academic record clearly demonstrated an aptitude for college, although his family's income is limited, since his father, a Korean War veteran, suffers from diabetes of such severity as to disable him from working. At the dispositional hearing, the State did not seek incarceration, nor was the statutory presumption against confinement overcome. G.S. was placed on a term of probation and fines were imposed. Probation conditions included the requirement that he attend school regularly, with no unexcused

absences and no detentions, that he maintain passing grades, and that he obtain a high school diploma.

Meantime, the school board of the Lower Camden County Regional High School District Number One (the "school district") in which Edgewood Senior High School is located, expelled G.S. for his participation in the bomb threat incident. According to the school district, there has been a history of several such incidents at Edgewood. In the past, suspension of students involved in those incidents and placement of them on in-home instruction has not deterred bomb threats. Accordingly, following the recommendation of the National Alliance for Safe Schools, the school district adopted a "Zero Tolerance" policy for all "bomb threat" cases, expelling all students involved in such conduct, such as G.S., with no further educational services provided. The district reports that adoption of this policy has led to a marked decrease in the number of such incidents.

While not challenging his expulsion from Edgewood Senior High School, G.S. points to the dispositional order of this Court requiring him to attend school and obtain a high school diploma, and asserts that the State is obligated under Article 8, § 4, para. 1 of the New Jersey Constitution to provide him further public education in an alternative program or setting.[1] It is in this posture that the matter is presented to the Court.

### Subject–Matter Jurisdiction

The school district asserts that the Court lacks subject-matter jurisdiction to determine whether G.S., the expelled juvenile delinquent, is entitled to any further public education. The district

---

[1] As discussed *infra,* legislation has been enacted providing for alternative education programs for other classes of adjudicated delinquents. *See, e.g., N.J.S.A.* 18A:47–1 (special schools of instruction for delinquents under age 16); *N.J.S.A.* 18A:37–7 (pupils removed from regular education programs by virtue of being adjudicated delinquent under the "Zero Tolerance for Guns Act" are to be placed in an alternative education program, or be provided with home instruction or other suitable facilities and programs).

relies on *N.J.S.A.* 18A:6–9, which vests the Commissioner of Education with "jurisdiction to hear and determine ... all controversies and disputes *arising under the school laws* ..." (emphasis added). The school district further relies on *Theodore v. Dover Board of Education*, 183 *N.J.Super.* 407, 412–13, 444 *A.*2d 60 (App.Div.1982) (school law disputes do not constitute part of the cognizable judicial business of the trial courts).

*Theodore* is inapposite. There, a school custodian sued a school board for wrongful termination in retaliation for his having pursued a worker's compensation claim, and on a claim under *N.J.S.A.* 18A:30–2.1, which provides for payment of sick leave benefits to a school board employee disabled as a result of a work-connected injury. The Appellate Division held that the claim for wrongful termination was initially within the jurisdiction of the Commissioner of Education, since it involved a school-law controversy where a local board's decision was challenged, and the exhaustion of remedies doctrine required first resort to the administrative process. *Id.* at 412–14, 444 *A.*2d 60. The court also noted that "[t]he school laws do not suggest that the Commissioner's primary jurisdiction is exclusive of court jurisdiction". *Id.* at 414 n. 2, 444 *A.*2d 60. Nor did the court construe *N.J.S.A.* 18A:6–9 as vesting the Commissioner of Education with exclusive or even primary jurisdiction to decide issues of constitutional import, or for enforcement of rights recognized by the New Jersey Constitution.

The issue here does not implicate the propriety of the school board's decision to expel G.S. at all. The propriety of the expulsion decision is not before this Court. The expulsion stands. It is unchallenged and not at issue. Any appeal of the school board's decision to expel G.S. would be within the jurisdictional domain of the Commissioner of Education, not this Court, just as would be the case of an appeal by a school employee terminated by a school board, as in *Theodore.* Rather, the substantive issues presented here are whether, given the expulsion from school of a juvenile adjudicated delinquent, he nonetheless is entitled to further public

school education under the Constitution or statutes of New Jersey, and if so, whether the Family Part may order the State to provide such education. This in turn raises the initial question whether the Court has subject-matter jurisdiction to decide the substantive issues in the first place.

■■■ Subject-matter jurisdiction involves the threshold determination as to whether the court is legally authorized to decide the question presented. *Gilbert v. Gladden*, 87 *N.J.* 275, 280–81, 432 *A.*2d 1351 (1981); *Carroll v. United Airlines, Inc.*, 325 *N.J.Super.* 353, 357, 739 *A.*2d 442 (App.Div.1999). For the reasons assigned below, the Court has subject-matter jurisdiction to decide the substantive issues in this case.

■■ First, the New Jersey Code of Juvenile Justice clothes the Superior Court, Chancery Division, Family Part with exclusive jurisdiction in all cases where it is charged that a juvenile has committed an act of delinquency or is in need of supervision. *N.J.S.A.* 2A:4A–24a. *N.J.S.A.* 2A:4A–21e provides that the Code of Juvenile Justice shall be construed "to insure that children under the jurisdiction of the court are wards of the State, subject to the discipline and *entitled to the protection of the State.*" The statute further provides that the Code shall be construed "to safeguard them from neglect or injury and to *enforce the legal obligations due to them* and from them" (emphasis added). The latter provisions would therefore include enforcement by the Family Part of the State's obligation under Article 8, § 4, para. 1 of the New Jersey Constitution to provide children such as G.S. with a free education ("[t]he Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of *all the children in the State* between the ages of five and eighteen years") (emphasis added). The Family Part is, in effect, mandated to exercise "the powers of the State as *parens patriae,* for the purpose of rehabilitating youthful offenders and not punishing them for the commission of a crime." *State in Interest of D.B.S.*, 137 *N.J.Super.* 371, 375, 349 *A.*2d 105 (App.Div.1975), *certif. den,* 70 *N.J.* 144, 358 *A.*2d

191 (1976) "The philosophy of the juvenile court law is aimed at rehabilitation through reformation and *education* in order to restore a delinquent youth to a position of responsible citizenship." *State v. Tuddles,* 38 *N.J.* 565, 571, 186 *A.*2d 284 (1962) (emphasis added). *See also, In re Lewis,* 11 *N.J.* 217, 224, 94 *A.*2d 328 (1953) (the statutory policy for treatment of juvenile offenders is directed to their rehabilitation for useful citizenship through reformation and *education* and not to their punishment, even where the offense underlying adjudication of juvenile delinquency is of a kind which when committed by an older person would merit indictment, conviction and punishment). It has been strongly emphasized that education is an important aspect of, and that in every instance should be provided for, in the rehabilitative process. An attempt to make a disposition in a juvenile case without providing for education would clearly be a *non sequitur. State in Interest of F.M.,* 167 *N.J.Super.* 185, 191, 400 *A.*2d 576 (Juv. & Dom.Rel.1979).

Furthermore, *N.J.S.A.* 2A:4A–43a.(7) mandates that the Court must consider the academic needs of an adjudicated child in its disposition and order. Indeed, *N.J.S.A.* 2A:4A–43b.(13) empowers the Court to order that the juvenile participate in a program of academic or vocational education. The Code of Juvenile Justice further provides that the Court may order an appropriate educational program for the child as part of a dispositional Order, pursuant to *N.J.S.A.* 2A:4A–43a.(7). The Court is further empowered by *N.J.S.A.* 2A:4A–43b(5) to place an adjudicated juvenile in the care of the Department of Human Services, under the responsibility of the Division of Youth and Family Services ("DYFS"), to provide services in or out of the home, as has been done in this case.

Moreover, the Family Part retains jurisdiction over cases such as this where it has entered a disposition, for the duration of the dispositional terms and conditions. *N.J.S.A.* 2A:4A–45; R.5:24–5 and 6.

Further, the school laws themselves contemplate that the Superior Court, Chancery Division, Family Part is to make deci-

sions involving the schooling of delinquent children. Thus, for example, Chapter 47 of Title 18A, *Schools For Dependent and Delinquent Children*, provides that it is the "Superior Court, Chancery Division, Family Part" who is to commit delinquent children under age 16 to special schools of instruction, pursuant to the "New Jersey Code of Juvenile Justice." *N.J.S.A.* 18A:47–1 and 4. The Family Part is further empowered to order children under 16 arrested for any cause except murder or manslaughter, as well as pupils habitually truant or incorrigible, to be held in such special schools until final judgment. These "special schools of instruction" include those established by the board of education of a local school district, or in another district. *N.J.S.A.* 18A:47–1 and 5.[2] It is the domain of the Family Part to commit such juveniles to these special schools of instruction. It is the domain of the Commissioner of Education to decide disputes between the school district in which the juvenile resides and the district in which the special school is established, as to which entity should pay the tuition. *See, e.g., Somerset County Educational Services Commission v. North Plainfield Board of Education, Somerset County,* —— *N.J.A.R.*2d (EDU) ——, 1999 *WL* 669276 (1999) (school district in which juvenile resides pays the tuition).

Finally, the proposition that a trial court has subject-matter jurisdiction to interpret and enforce rights recognized by the New Jersey Constitution and decide issues of constitutional import is abundantly clear. *King v. South Jersey Nat. Bank,* 66 *N.J.* 161, 168, 177, 330 *A.*2d 1 (1974) (the power of the courts to enforce rights recognized by the New Jersey Constitution, even in the absence of implementing legislation, is clear).

Thus, this Court has subject-matter jurisdiction to decide whether an adjudicated delinquent expelled from school by a board of education of a New Jersey school district retains or is

---

[2] There are various "special schools of instruction" or alternative schools in Camden County, but such schools will not accept delinquent children unless they have been classified as handicapped under *N.J.S.A.* 18A:47–1. G.S. is not so classified.

thereby stripped of his or her constitutional right to any form of public education.

## THE CONSTITUTIONAL OBLIGATION OF THE STATE TO PROVIDE PUBLIC EDUCATION TO A DELINQUENT JUVENILE WHO HAS BEEN EXPELLED BY HIS LOCAL SCHOOL DISTRICT

■ The New Jersey Constitution, Article 8, § 4, para. 1 mandates that:

> The legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of *all the children in the State* between the ages of five and eighteen years (emphasis added).

Thus, the Constitution guarantees G.S. the right to free school instruction. The Constitution places the obligation to provide school instruction upon the State. "[T]he State's duty to educate children is a matter of constitutional demand." *Pingry Corp. v. Hillside Twp.*, 46 *N.J.* 457, 461, 217 *A*.2d 868 (1966) (emphasis added). Moreover, as Justice Pashman observed in *Right to Choose v. Byrne*, 91 *N.J.* 287, 333, 450 *A*.2d 925 (1982):

> The New Jersey Constitution is not an empty gesture. It is a bedrock of liberty in this State. We must uphold it.

The proper education of children has always been of supreme importance and an objective which has long been pursued in our State. *State v. Vaughn*, 44 *N.J.* 142, 207 *A*.2d 537 (1965); *State in Interest of F.M.*, 167 *N.J.Super.* 185, 400 *A*.2d 576 (Juv. & Dom.Rel.1979).

In enacting *N.J.S.A.* 18A:38–25 *et seq.*, the Legislature has implemented this constitutional demand by providing for the public education of every child within the State. Pursuant to *N.J.S.A.* 18A:38–25 the parent, guardian or other person having custody of every child is required to see to it that the child attends "the public schools of the district or a day school in which there is given instruction equivalent to that provided in the public schools for children of similar grades and attainments . . . ."

■ It is clear that the constitutional obligation of the State to provide children with a public education extends to juveniles who have been adjudicated delinquent. Thus, for example, those juveniles who have been adjudicated delinquent and committed by the Family Part to the Juvenile Justice Commission, including placement in lock-up facilities such as the New Jersey State Training School for Boys at Jamesburg, continue to receive education. This is in accord with the principle that "a thorough education [may not] be precluded by virtue of the fact that the child is either handicapped, imprisoned or otherwise involuntarily placed in a facility outside the normal school environment." *State in Interest of F.M., supra,* 167 *N.J.Super.* at 190, 400 *A.*2d 576; *N.J.S.A.* 18A:46–1; *N.J.S.A.* 18A:47–1 to 18A:47–12.

■ Clearly then, the State has the constitutional obligation to provide an education to a juvenile who has been adjudicated delinquent and placed on probation, even though his local school district has expelled him. In 1995, the Legislature recognized this obligation in an analogous situation involving juveniles who have been adjudicated delinquent and placed on probation for possession or use of a firearm on school property or a school bus, or at a school-related function. In such instances, the Legislature has mandated provision of continuing education for such offenders. *See, N.J.S.A.* 18A:37–7 to 18A:37–12, the "Zero Tolerance for Guns Act." Pursuant to that Act, those offenders shall be removed from the regular education program, and are to be placed in an alternative education program, or be provided home instruction or other suitable facilities and programs.

Moreover, as expounded upon in the foregoing discussion of the Court's subject-matter jurisdiction in such matters, the dispositional provisions of the New Jersey Code of Juvenile Justice contemplate that adjudicated delinquents will continue to receive public education up until their 19th birthday, by authorizing the Family Part to: (1) consider a delinquent's academic needs; (2) order him to participate in an academic education program; and (3) order an appropriate educational program for him. *N.J.S.A.*

2A:4A–43a.(7) and (13). Likewise, the Code empowers the Family Part to "enforce the legal obligations due" to a delinquent juvenile which, as noted, would include enforcement of the State's constitutional obligation to provide him a free education. *N.J.S.A.* 2A:4A–21e.

Obviously then, the Legislature recognizes that expulsion of an adjudicated juvenile by his local school board does not sound the death knell for his constitutional right to receive alternative education in another setting, and further, that the Family Part is empowered to order that such alternative education be provided for him. As Judge Minuskin aptly put it in *F.M.*:

> "The philosophy of the juvenile court law is aimed at rehabilitation through reformation and education in order to restore a delinquent youth to a position of responsible citizenship." *State v. Tuddles,* 38 *N.J.* 565, 571, 186 *A.2d* 284 (1962). See also, *In re Lewis,* 11 *N.J.* 217, 94 *A.2d* 328 (1953). Thus, it cannot be stressed strongly enough that education is an important aspect of, and in every instance should be provided for in the rehabilitative process. An attempt to make a disposition in a juvenile case without providing for education would clearly be a *non sequitur.*

> [167 *N.J.Super.* at 191, 400 *A.2d* 576].

■ Accordingly, the State should be directed to provide an alternative school program for G.S., in order to effectuate its constitutional obligation to furnish him a free public education until he attains his high school diploma or attains his 19th birthday, whichever first occurs. Towards that end, the State of New Jersey, through the State Department of Education, DYFS or other appropriate agency, was ordered to place G.S. in a school instruction program that is grade-level appropriate for him, including an in-school program, in-home instruction program, or other alternative education facility or program. In accordance with that Order, DYFS has now placed G.S. in the Atlantic County Transitional School in Egg Harbor Township, and bus transportation is being provided. Any dispute as to whether the tuition for that program should be funded by the State or by Lower Camden County Regional High School District Number One is for the Commissioner of Education to decide.