SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Paula Melnyk v. Board of Education of the Delsea Regional High School District**
(A-77-18) (082354)

**Argued November 4, 2019 -- Decided January 30, 2020**

**LaVECCHIA, J., writing for the Court.**

The Court considers a challenge by Petitioner Paula Melnyk of the determination by the Commissioner of Education, affirmed by the Appellate Division, that her tenure rights were violated when she was not continued in her after-hours teaching position in a tenure-eligible alternative education program and was replaced by a non-tenured teacher.

Melnyk was a tenured special education teacher with considerable seniority within the school district when this dispute arose. She was a full-time special education teacher employed by the Board of Education of the Delsea Regional High School District (the Board) since September 1991. In that capacity, she was required to hold an Instructional Certificate that included endorsements as a "Teacher of the Handicapped and Elementary School Teacher" and as having "highly qualified status in English instruction." In September 2002, the Board first assigned Melnyk to work in the position of "Special Education Alternative Program Teacher" to teach special education classes in the evening in addition to her regular daytime instructional position.

The alternative education program, titled "BookBinders," was provided by the Board, in accordance with regulatory standards, for children who were not succeeding in the general education program or were mandated for removal from general education. Per the Board's Policy, the alternative education program required its staff members to be "appropriately certified"; thus, to hold her BookBinders teaching position, Melnyk was required to have an Instructional Certificate with a Teacher of the Handicapped endorsement, which is the same certificate and endorsement required of her for her day position as a special education teacher.

Melnyk served as a special education English teacher in the BookBinders program from 2002 through the end of the 2014-15 school year, with the exception of the 2009-10 school year. There is no question that she served long enough in that position to satisfy the service requirement for tenure. During that time, Melnyk also served as a full-time special education teacher in the regular program during the contractual school day hours.

1

In August 2014, the Superintendent of Schools for the Board informed Melnyk that the Board had determined to assign another, non-tenured teacher to teach English in the BookBinders program in the following 2015-16 school year.

Melnyk promptly filed a petition of appeal with the Commissioner of Education to challenge that decision as a violation of her tenure rights. An administrative law judge (ALJ) framed the issue as "whether the petitioner acquired tenure rights with respect to her BookBinders assignment as a special education teacher where the BookBinders assignment was an extracurricular duty performed in the evenings that did not require additional certification beyond that required by the petitioner for her primary position as a special education teacher during regular school hours." The ALJ determined that Melnyk's assignment with BookBinders was extracurricular and concluded that Melnyk was not entitled to tenure in that position because the extracurricular position did not require additional certification beyond what Melnyk already possessed. In a Final Agency Decision, the Commissioner of Education adopted the recommended findings and conclusions of the ALJ's Initial Decision.

The Appellate Division affirmed in an unpublished decision, relying heavily on the ALJ's reasoning and citing to a line of administrative determinations holding that teachers may not acquire tenure in an extracurricular position unless additional certification is necessary to hold the position.

The Court granted Melnyk's petition for certification. 238 N.J. 35 (2019).

**HELD:** Tenure is a statutory right controlled by law. The tribunals that concluded petitioner suffered no deprivation of her tenure rights engaged in legal error by labeling the position as "extracurricular" and then short-circuiting the requisite analysis based on that classification. This instructional and tenure-eligible position did not become extracurricular and tenure ineligible simply because petitioner already held tenure in another position. Petitioner met the statutory criteria for tenure and is entitled to a remedy for the violation of her right not to be removed or reduced in salary while protected by tenure for her work in the BookBinders program.

1. The statutes known as the Tenure Act set forth the requirements that allow a teacher to achieve tenure status and the protections provided to a tenured teaching staff member. In Spiewak v. Summit Board of Education, this Court definitively explained the nature of tenure rights accorded to teachers by that statutory scheme. 90 N.J. 63, 77 (1982). In its core holding, Spiewak pronounces that "all teaching staff members who work in positions for which a certificate is required, who hold valid certificates, and who have worked the requisite number of years, are eligible for tenure unless" certain exceptions not relevant here apply. Id. at 81. The Court noted that allowing school boards to determine when tenure should be offered would fly in the face of the Legislature's mandate that all teachers who qualify for tenure receive tenure. Id. at 80. (pp. 13-15)

2

2. Employing a straightforward application of Spiewak, this matter should involve a simple application of the Tenure Act's requirements. That clear analysis was sidetracked by labeling Melnyk's position in the BookBinders program as "extracurricular" and equating it to optional activities to enhance students' social skills, physical fitness, and community-minded spirit. There can be no tyranny of labels permitted in this analysis. The BookBinders program must be seen for what it is: an alternative education program that is part of the delivery of constitutionally required educational services. The Court reviews the regulatory framework governing alternative education programs, which are not optional but rather part of the provision of an overall, essential education program for challenged students who require full educational services outside of the normal school day hours and setting. Students have a constitutional right to an education in New Jersey, and alternative education programs make it possible to satisfy that obligation with respect to students required to be removed from the traditional classroom population and instructional setting. The Court reviews the Board policy establishing the BookBinders program and concludes that the program was not properly categorized as an "extracurricular" position in the traditional usage of that word. (pp. 16-25)

3. Pigeon-holing Melnyk's BookBinders position as "extracurricular" was compounded by imputing a requirement particular to traditional extracurricular activities to the BookBinders program, namely that tenure rights cannot be acquired in an extracurricular program unless that program requires the teacher to hold an additional instructional certification than that required for the teacher's full-time position. Here, the Board concedes that Melnyk's position in the BookBinders program would be tenure eligible if it were filled by a person not already serving as an instructor in the regular day program. If the additional-certificate requirement were applied here, it would impose a new and additional step for the acquisition of tenure in the BookBinders program only for teachers, like Melnyk, who are already tenured in the regular day education program. The Court sees no basis to impose such a requirement. Rather, as Spiewak underscores, it is necessary that a tenure-eligible position carry an instructional certification requirement, but there is no requirement for an additional certification. In other words, BookBinders positions are tenure eligible for any person hired to fill a position requiring an instructional certificate. And tenure eligibility in a BookBinders position must therefore be analyzed purely on the basis of Spiewak's dictates. (pp. 25-27)

4. Here, Melnyk's service in the BookBinders program satisfied Spiewak. She therefore acquired tenure rights to this position, and her compensation for it could not be reduced without compliance with the procedural protections of the Tenure Act. (p. 27)

   **REVERSED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.**

3

# SUPREME COURT OF NEW JERSEY
## A-77 September Term 2018
### 082354

Paula Melnyk,

Petitioner-Appellant,

v.

Board of Education of the Delsea
Regional High School District,
Gloucester County,

Respondent-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 4, 2019 | January 30, 2020 |

Hop T. Wechsler argued the cause for appellant (Selikoff & Cohen, attorneys; Hop T. Wechsler and Keith Waldman, on the briefs).

Andrew W. Li argued the cause for respondent Board of Education of the Delsea Regional High School District (Parker McCay, attorneys; Andrew W. Li, on the brief).

Donna Arons, Assistant Attorney General, argued the cause for respondent Commissioner of Education (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel and Joan M. Scatton, Deputy Attorney General, on the brief).

1

This appeal demonstrates the ability of labels to cloud an analysis. By calling a teacher's instructional work in a specialized and separate district educational program, provided outside of regular school instructional hours, an "extracurricular assignment," the school district claimed that the teacher had no tenure protection to that position and had no recourse when she was replaced by a non-tenured teacher and suffered a loss in compensation. The district wrapped the label "extracurricular" around the assignment even though the after-hours instructional program was provided by the school district in order to fulfill core curriculum requirements for certain students unable to fulfill those requirements through the school district's day program.

The after-hours instructional program in question here is "BookBinders," the Delsea School District's alternative education program. The program is authorized by regulation, see N.J.A.C. 6A:16-1.3, -9.1, -9.3, implemented by a policy adopted by the Board of Education of the Delsea Regional High School District (the Board), and run after regular school-day hours or during evenings. BookBinders is provided to students either removed from the regular day's instructional classes due to behavioral issues or otherwise required to receive

instruction that meets state-required core educational standards outside of a regular classroom setting.

Petitioner Paula Melnyk worked for BookBinders for longer than the time needed to acquire tenure under N.J.S.A. 18A:28-5(a). She filed this action before the Commissioner of Education because she believed her tenure rights were violated when she was not continued in her after-hours teaching position and was replaced by a non-tenured teacher.

This appeal is from a quasi-judicial decision of an administrative agency and therefore judicial review is constrained. Mindful of the deferential review owed to the Commissioner of Education's administrative decision denying petitioner's claim, which was affirmed by the Appellate Division, we reverse.

The teaching position in which petitioner served in the alternative education program was tenure eligible. Indeed, the Board and the Commissioner both conceded that a person serving in that BookBinders position exclusively for the requisite period of time would be entitled to tenure. But petitioner was denied tenure because she already held tenure in a teaching position in the district's regular-education day-instruction program.

Tenure is a statutory right controlled by law. See Spiewak v. Summit Bd. of Educ., 90 N.J. 63, 77 (1982). The tribunals that concluded petitioner suffered no deprivation of her tenure rights engaged in legal error by labeling

3

the position as "extracurricular" and then short-circuiting the requisite analysis based on that classification. This instructional and tenure-eligible position did not become extracurricular and tenure ineligible simply because petitioner already held tenure in another position.

We hold that petitioner met the statutory criteria for tenure and that she is entitled to a remedy for the violation of her right not to be removed or reduced in salary while protected by tenure for her work in the BookBinders program.

I.

A.

The essential facts are derived from the record created by the parties before the Office of Administrative Law, where the case was disposed of on cross-motions for summary decision. See N.J.A.C. 1:1-12.5(a), (b). We glean these facts from the statements of undisputed facts and supporting documents, the same record that the Commissioner relied on.

Paula Melnyk was a tenured special education teacher with considerable seniority within the school district when this dispute arose. She was a full-time special education teacher employed by the Board since September 1991. In that capacity, she was required to hold an Instructional Certificate that

4

included endorsements as a "Teacher of the Handicapped and Elementary School Teacher" and as having "highly qualified status in English instruction."

Pursuant to the applicable contract for the 2014-15 school year, Melnyk's salary for her position as a special education teacher was $82,874. That contract also contained language pertaining to extracurricular duties generally, which stated that "if compensation is to be made to the teacher for extracurricular duties, such compensation shall be made to the teacher at the completion of the extracurricular duties unless otherwise stated in writing."

In September 2002, the Board first assigned Melnyk to work in the position of "Special Education Alternative Program Teacher" to teach special education classes in the evening in addition to her regular daytime instructional position. The alternative education program,[1] titled

---

[1] According to N.J.A.C. 6A:16-1.3,

> "Alternative education program" means a comprehensive educational program designed to address the individual learning, behavior, and health needs of students who are not succeeding in the general education program or who have been mandated for removal from general education, pursuant to N.J.A.C. 6A:16-5.5, 5.6 and, as appropriate, 5.7. The alternative education program shall provide a variety of approaches to meet the State-adopted standards, such as, through non-traditional programs, services, and methodologies to ensure curriculum and instruction are delivered in a way that enables students to demonstrate

"BookBinders," was provided by the Board in accordance with standards for such programs set forth in N.J.A.C. 6A:16-9.1 to -9.3 for children who were not succeeding in the general education program for a variety of reasons or were mandated for removal from general education. The program was designed to comply with Board Policy No. 2480, which implemented the Board's decision to provide its own alternative education program, as opposed to sending pupils needing such services to outside providers. School districts can choose whether to provide an alternative education program, but if one is not provided by a district itself then the district must provide for pupil access to similar educational programs elsewhere. See N.J.A.C. 6A:16-5.5(e), -5.6(e), -9.1, -9.3(b).

Melnyk was among the teachers selected to staff the program. Per the Board's Policy, the alternative education program required its staff members to be "appropriately certified"; thus, to hold her BookBinders teaching position, Melnyk was required to have an Instructional Certificate with a Teacher of the Handicapped endorsement, which is the same certificate and endorsement required of her for her day position as a special education teacher. The Board's Policy requires BookBinders teachers to provide instruction

_____

the knowledge and skills specified for all students in N.J.A.C. 6A:8.

6

"sufficient to fulfill pupil graduation requirements," "comply with school attendance policies," comply with the Individualized Education Program (IEP) for students with disabilities, and help provide comprehensive support services and programs to "address each pupil's health, social, and emotional development and behavior."

Melnyk served as a special education English teacher in the BookBinders program from 2002 through the end of the 2014-15 school year, with the exception of a break in that service during the 2009-10 school year. She resumed the position of Special Education Alternative Program Teacher for the 2010-11 school year and served continuously thereafter until the instant dispute arose; there is no question that she served long enough in that position to satisfy the service requirement for tenure. See N.J.S.A. 18A:28-5(a)(2) (requiring employment for three consecutive academic years and employment at the beginning of the next succeeding year). During that time, Melnyk also served as a full-time special education teacher in the regular school program during the contractual school day hours.

On August 7, 2014, the Superintendent of Schools for the Board informed Melnyk that a salary of $20 an hour had been approved for the special education English teacher position for the BookBinders program for the 2014-15 school year, but also informed her that the Board had determined

to assign another, non-tenured teacher to teach English in the BookBinders program in the following 2015-16 school year.

B.

Melnyk promptly challenged the Board's decision to replace her in the BookBinders position with a non-tenured person, claiming a violation of her tenure rights. In July 2015, she filed a timely petition of appeal with the Commissioner of Education, in which she asserted that the BookBinders position was tenure eligible and that she had acquired tenure in her position as a Special Education Alternative Program teacher. The Board filed an answer disputing that the position was tenure eligible.

The Commissioner transferred the matter as a contested case to the Office of Administrative Law, and the matter was resolved on cross-motions for summary decision. In an Initial Decision, an administrative law judge (ALJ) recommended that the judgment be granted to the Board and the petition of appeal be dismissed.

The ALJ framed the issue as "whether the petitioner acquired tenure rights with respect to her BookBinders assignment as a special education teacher where the BookBinders assignment was an extracurricular duty performed in the evenings that did not require additional certification beyond that required by the petitioner for her primary position as a special education

8

teacher during regular school hours." The ALJ determined that Melnyk's assignment with BookBinders was extracurricular, explaining that it fell outside of her usual duties as a special education teacher during normal school hours. The ALJ concluded that she was not entitled to tenure in the BookBinders position because the extracurricular position did not require additional certification beyond what Melnyk already possessed.

Because the ALJ determined that Melnyk was not entitled to tenure in the position, the ALJ also reasoned that Melnyk was not entitled to compensation for removal from the BookBinders position. The ALJ noted that Melnyk was paid a stipend for her BookBinders position rendering her compensation for that position as remuneration that was "not integral to her contractual salary." In sum, the ALJ concluded that Melnyk was not owed back pay or other compensation because the alternative position was "neither engrafted onto her primary tenured position nor compensated as an integral part of her [tenure-protected] salary."

In a Final Agency Decision, the Commissioner of Education adopted the recommended findings and conclusions of the ALJ's Initial Decision. The Commissioner agreed that Melnyk's position in the BookBinders program was separate from her full-time position in the general education program and therefore extracurricular, and further agreed that Melnyk could not claim a

tenure right to that separate position because she was not required to hold an instructional certificate different from the one she held for her already tenured full-time position. The Commissioner also agreed with the ALJ's determination that Melnyk's BookBinders compensation was not protected by tenure against reduction for substantially the same reasons as put forward by the ALJ.

The Appellate Division affirmed in an unpublished decision, relying heavily on the ALJ's reasoning and citing to a line of administrative determinations holding that teachers may not acquire tenure in an extracurricular position unless additional certification is necessary to hold the position. In addition to noting that Melnyk was not eligible for tenure because she did not need to have additional certification to teach in the BookBinders program -- beyond that already required of her to teach during the regular school day program -- the Appellate Division concluded that the Commissioner's decision was not in any way arbitrary, capricious, or unreasonable. Accordingly, the appellate court affirmed the administrative agency's quasi-judicial decision.

We granted Melnyk's petition for certification. 238 N.J. 35 (2019).

## II.

The arguments advanced before us are largely the same as those presented to the administrative agency and the Appellate Division.

Briefly, Melnyk asserts that the decision under review conflicts with both the tenure law and this Court's foundational holding in Spiewak. She disputes that her position with BookBinders is equivalent to the types of positions loosely categorized as extracurricular and asserts that her after-school academic program is different in kind, rendering her instructional position in that program tenure eligible. Further, she argues that she should not be barred from obtaining additional tenure protection from this second, and separate, after-hours instructional program designed to satisfy core curriculum requirements for students the school district is required to accommodate with alternative education. Basically, Melnyk argues that if a non-extracurricular position meets the requirements of the Spiewak test, it is tenure eligible, and BookBinders was such a position.

The Board argues that the BookBinders position was extracurricular and insists that teaching staff do not accrue tenure in extracurricular positions unless the position requires the staff member to hold additional certification. Here, Melnyk did not have to hold any additional certification to teach in BookBinders, and so she could not acquire tenure in the position. Further, the

11

Board maintains that when a teaching staff member does achieve tenure, it is their general position as a teacher that is protected, not the underlying specialty position in which he or she serves. To make its point, the Board uses the example that although teachers can accrue tenure in a position for which they are appropriately certified, such as a K-8 teacher, the specific position of "Third Grade Teacher" is not protected, and that the BookBinders position is not similarly tenure protected. The Board asserts that because Melnyk did not require additional certification to teach in BookBinders, she did not acquire any tenure protection in the position.

III.

We acknowledge that under the well-recognized standard of review applicable in an appeal from an administrative agency's decision, the Commissioner's decision in this matter is entitled to affirmance so long as the determination is not arbitrary, capricious, or unreasonable, which includes examination into whether the decision lacks sufficient support in the record or involves an erroneous interpretation of law. See Zimmerman v. Sussex Cty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019).

However, "[i]n an appeal from a final agency decision, an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Ardan v. Bd. of Review, 231 N.J.

12

589, 604 (2018) (quoting US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012)). The question in this matter involves consideration of a strictly legal question, namely a determination of the proper application of the tenure statutes as expounded upon by this Court in Spiewak. Thus, we review the statutory command as explained by Spiewak on equal footing with the Commissioner.

IV.

The statutes known as the Tenure Act set forth the requirements that allow a teacher to achieve tenure status and the protections provided to a tenured teaching staff member. N.J.S.A. 18A:28-1 to -18 (the Tenure Act or Act). The Act generally describes and defines the conditions under which teachers are entitled to tenure. It lists the specific positions that may be entitled to tenure protection, including "teacher[s] . . . and such other employees as are in positions which require them to hold appropriate certificates issued by the board of examiners, serving in any school district or under any board of education." N.J.S.A. 18A:28-5(a). The statutory scheme then imposes a certification requirement and a length-of-service requirement for achieving tenure protection. Ibid.

In Spiewak, this Court definitively explained the nature of tenure rights accorded to teachers by that statutory scheme: "By the express terms of the[] [tenure] statutes, an employee of a board of education is entitled to tenure if

13

(1) she works in a position for which a teaching certificate is required; (2) she holds the appropriate certificate; and (3) she has served the requisite period of time." 90 N.J. at 74. Updated amendments to the tenure laws in 2012 have not affected those basic requirements. See L. 2012, c. 26, § 9.

The Court's decision in Spiewak addressed "whether public school teachers who provide remedial and supplemental instruction to educationally handicapped children may acquire tenure." 90 N.J. at 66. Rita Spiewak worked as an instructor in a supplemental academic program for educationally handicapped children for the Rutherford Board of Education but was contractually set on a dead-end path for the acquisition of tenure. Id. at 67-68. Meanwhile, her employer had contracts with two other supplemental instructors who performed duties that were "not materially different" from Spiewak's, but who were deemed eligible for tenure and paid at a higher scale than Spiewak. Id. at 68. Spiewak challenged her different treatment with respect to tenure eligibility and protection. Id. at 69.

In concluding that Spiewak was eligible for tenure, the Court stated that "[w]hether certain teachers are entitled to tenure never depends on the contractual agreement between the teachers and the board of education. Tenure is a 'statutory right imposed upon a teacher's contractual employment.'" Id. at 77 (quoting Zimmerman v. Newark Bd. of Educ., 38 N.J.

14

65, 72 (1962)). In its core holding, <u>Spiewak</u> pronounces that "all teaching staff members who work in positions for which a certificate is required, who hold valid certificates, and who have worked the requisite number of years, are eligible for tenure unless they come within the explicit exceptions in N.J.S.A. 18A:28-5 or related statutes such as N.J.S.A. 18A:16-1.1." <u>Id.</u> at 81.

The Court commented that

> [t]he unfairness of making tenure subject to contract negotiations is apparent from these cases. In <u>Spiewak</u>, for example, the school board has hired two supplemental teachers on a contract and tenurable basis. It has also hired several teachers on an hourly, non-tenurable basis. Yet their duties are nearly identical. If tenure were a matter of contract, its protection would be available only to those employees that the boards choose to favor with it.
>
> [<u>Id.</u> at 80.]

The Court noted that allowing school boards to determine when tenure should be offered would fly in the face of the Legislature's mandate that all teachers who qualify for tenure receive tenure. <u>Ibid.</u> Construing the Tenure Act "liberally . . . to achieve its beneficent ends," the Court found no evidence that the protections of tenure should be withheld from those who teach in remedial or supplemental positions, particularly because remedial and supplemental education is mandated by statute for students who need such instruction. <u>Id.</u> at 74-75.

15

## V.

Employing a straightforward application of <u>Spiewak</u>, this matter should involve a simple application of the Tenure Act's requirements.  If Melnyk served in her instructional position in the BookBinders program for the requisite period of time and held the required instructional certificate to teach in that position, she should be entitled to tenure protections against removal or reduction in compensation associated with that position.

However, that clear analysis was sidetracked by labeling Melnyk's position in the BookBinders program as "extracurricular" and equating it to activities like sports programs, literary and other arts-based activities, social/club-like programs, and other optional activities to enhance students' social skills, physical fitness, and community-minded spirit.  That initial detour, which pigeon-holed Melnyk's BookBinders position as "extracurricular," was compounded by imputing a requirement particular to traditional extracurricular activities to the BookBinders program, namely that Melnyk could not acquire tenure rights to her position in BookBinders unless that program required her to hold an additional instructional certification than that which she already held for her full-time regular education position.  The result of that second detour is that Melnyk was treated as a distinct class of persons assigned to a teaching position in BookBinders and was subjected to

16

an additional tenure requirement vis-à-vis her BookBinders colleagues who were not tenured in the regular day program.

We reject those detours in turn.

### A.

By labeling the BookBinders program as "extracurricular," the Board sought to avoid Spiewak's application. However, the label is not impervious to challenge. There can be no tyranny of labels permitted in this analysis.

The BookBinders program must be seen for what it is: an alternative education program that is part of the delivery of constitutionally required educational services that comprise the system of a thorough and efficient education delivered by the Board. The educational services are obligatory, even though the way in which a school district chooses to provide such services to the students who need them is optional. In that critical way, this program is unlike any comparable "extracurricular" optional after-hours program that was used by analogy by the Board, the Commissioner, or the Appellate Division.

According to governing regulations for alternative education programs, a local board of education has the option to provide such services itself. Pursuant to N.J.A.C. 6A:16-9.1(a), since that regulation's approval process was last fine-tuned in 2006, "[e]ach district board of education choosing to

17

operate an alternative education program, pursuant to N.J.A.C. 6A:16-1.3,"

must act to approve the program. If a program is run by a state agency, public

college, or Department-of-Education-approved school, the Commissioner must

approve it. N.J.A.C. 6A:16-9.1(b). To be approved, alternative education

programs are to be designed to provide education for students who are not

succeeding in a general education program for any number of reasons.

N.J.A.C. 6A:16-1.3.

School districts are not each required to provide an alternative education

program themselves; should a district send its eligible pupils to another

approved alternative education program, however, that program must be in

compliance with state standards. N.J.A.C. 6A:16-9.3(b) provides that

> [i]f a district board of education places a student in an
> alternative education program approved by another
> district board of education, pursuant to N.J.A.C. 6A:16-
> 9.1(a)[], or another approved agency, pursuant to
> N.J.A.C. 6A:16-9.1(b), the district board of education
> of the sending school district shall be responsible for
> ensuring compliance with the requirements of this
> subchapter.

When a district decides to operate its own alternative education program,

the program must be a "comprehensive educational program designed" to

provide instruction and aid with student achievement of core curriculum

education standards for students who are not succeeding in or who were

18

mandatorily removed from general education programs.  N.J.A.C. 6A:16-1.3

(incorporating reference to core curriculum standards contained in N.J.A.C.

6A:8).  Alternative education programs are thus not optional tutorial services

provided as part of a spectrum of voluntary after-hours program-enhancement

opportunities for students.  Rather, such programs are part of the provision of

an overall, essential education program, consistent with state standards, for

challenged students who require full educational services outside of the normal

school day hours and setting.

Students have a constitutional right to an education in New Jersey, see

N.J. Const. art. VIII, § 4, ¶ 1, and the State has an obligation to provide many

types of at-risk students with an education designed to assist the student with

core curriculum standards.  See State ex rel. G.S., 330 N.J. Super. 383, 392-94

(Ch. Div. 2000) (noting the breadth of State's obligation to provide education

to at-risk children, including juveniles adjudicated delinquent).  Alternative

education programs make the satisfaction of that obligation possible with

respect to various categories of students.

For example, regulations require the removal of students with certain

behavioral issues from the traditional classroom population and instructional

setting.  See N.J.A.C. 6A:16-5.5(a), (b) (requiring that "[e]ach district board of

education shall immediately remove from the school's general education

19

program for a period of not less than one calendar year" students who are "found knowingly" in possession of a firearm on school grounds or convicted of or adjudicated delinquent for a student offense involving a firearm). However, students removed from the classroom pursuant to N.J.A.C. 6A:16-5.5(b) still must be educated and must be placed in alternative education programs unless one is not available, in which case the student will be provided with out-of-school instruction. N.J.A.C. 6A:16-5.5(e); see also N.J.A.C. 6A:16-5.6(b) (setting same requirements for students who commit an assault with a weapon that is not a firearm, except that they will be removed from school for a period of no longer than a year). And, for students who commit an assault "not involving the use of a weapon or firearm" upon a school district employee under certain circumstances, immediate removal from school is also required. N.J.A.C. 6A:16-5.7(a), (b). Although there is no mandated period of removal for this category of student, the student is nonetheless entitled to continue to receive educational services during the removal period. N.J.A.C. 6A:16-5.7(b).

Because alternative education programs must be comprehensive enough to provide a thorough education to students who are removed from the general education program for extended periods of time, the programs must address

20

students' educational needs.  They do not simply supplement areas where students need extra assistance.

In the BookBinders program, Melnyk was providing substantive English education in accordance with the standards set forth in N.J.A.C. 6A:16-9.1 to -9.3.  The Board modelled the BookBinders program on a series of regulatory requirements.  In authorizing the establishment of the BookBinders program, the Board issued a detailed and specific policy.  We quote from the Board's Policy No. 2480 in full:

> The Board of Education may operate an alternative education program in accordance with the requirements of N.J.A.C. 6A:16-9.1.  The program shall be approved by the Commissioner of Education and shall be separate and distinct from the already existing programs operated by the Board.
>
> An alternative education program will fulfill the program criteria for both a high school and middle school program as outlined in N.J.A.C. 6A:16-9.2.  A program will have a maximum pupil-teacher ratio of 12:1 for high school programs and 10:1 for middle school programs.  An Individualized Program Plan (IPP) shall be developed for each general education pupil enrolled in the program in accordance with N.J.A.C. 6A:16-9.2(a)(3).  For a pupil with a disability, the alternative education program shall be consistent with the pupil's Individualized Education Program (IEP), pursuant to N.J.A.C. 6A:14, Special Education.
>
> Individualized instruction to all pupils shall address the Core Curriculum Content Standards.  Academic

21

instruction sufficient to fulfill graduation requirements, pursuant to N.J.A.C. 6A:8-5.1, shall be provided to high school pupils. Comprehensive support services and programs shall address each pupil's health, social, and emotional development and behavior. Instructional staff in an alternative education program shall be appropriately certified.

Pupils in the alternative education program shall comply with attendance policies, pursuant to N.J.A.C. 6A:16-7.8 and 6A:32-8.3. Case management services including, but not limited to, monitoring and evaluating pupil progress and coordinating instructional and support services shall be provided as required in N.J.A.C. 6A:16-9.2(a)(10). Services to facilitate the transition of pupils returning to the general or special education program from the alternative education program shall be provided. A minimum pupil enrollment period of not less than two complete marking periods shall be required pursuant to N.J.A.C. 6A:16-9.2(a)(12).

Pupil placement in an alternative education program shall be made pursuant to N.J.A.C. 16A:-9.3(a) [sic].[2] If the district places a pupil in an alternative education program operated by another district Board of Education, pursuant to N.J.A.C. 6A:16-9.1(a), or another approved agency, pursuant to N.J.A.C. 6A:16-9.1(b), the sending school district shall be responsible for ensuring compliance with the requirements of N.J.A.C. 6A:16-9.

Decisions regarding continued placement in an alternative education program or a change to a pupil's placement shall be made for general education pupils in

---

[2] N.J.A.C. 6A:16-9.3(a) sets forth that requirement.

22

accordance with N.J.A.C. 6A:16-9.3(c)(1) and for pupils with disabilities in accordance with N.J.A.C. 6A:16-9.3(c)(2).

For specific infractions of our Student Code of Conduct, second offense drug infractions, and weapons offenses, the Board of Education, based upon the recommendation of the appropriate administrator, will approve placement into the Alternate Program.

The recommendation will adhere to the following program options:
1. Placement for one school year (180 days) with no sixth month review, and no co-curricular involvement.
2. Placement for one school year (180 days) with a sixth month review to consider changes in prescribed program. If a change is recommended it must go before the Board for consideration since the Board approved the original placement/program.
3. If an extenuating circumstance exists, the Board may approve less than one-year program as recommended by the administration, and require regular monitoring of student progress.
4. Note: Definition of six month review requires six months of the school calendar.

In all of the above options the Substance Awareness Coordinator must monitor the contract agreed to by the student's parent/guardian and the administration. If at anytime there is a violation of the terms of the agreement, the administration and the Board must be informed and an appropriate review must occur that may result in a program change.

It is clear that the Board's Policy is meant to provide a program that is substantive and comprehensive and is run as a complete alternative to the regular school program. The Board ran its alternative education program in the evenings, outside of traditional school hours, and required teachers to have an Instructional Certificate with a Teacher of the Handicapped endorsement. According to the Board's Policy, its alternative education program "shall be separate and distinct from the already existing programs operated by the Board."

The BookBinders program run by the Board was not properly categorized as an "extracurricular" position in the traditional usage of that word. The ALJ was more accurate in describing this program as "separate" from the regular school education program. This was, in effect, a distinct, replacement education program for students educated apart from students in the regular day programming, and it cannot be treated as a permutation of a quintessentially extracurricular school program like one devoted to sports, the arts, socialization, and the community. Such programs, and the staff positions that support, counsel, or coach them, supplement the educational program provided during the regular school day and are optional. BookBinders supplants the regular educational program for the pupils it serves -- it is

"curricular" in every way, not extracurricular.[3] BookBinders had a separate instructional program with delineated educational requirements, hours, length of school year, and instructional certification requirements to satisfy state standards for a pupil population that was being educated separate and apart from pupils in the day programs. It was legal error to equate it with an optional extracurricular program that supplements a student's school experience with an array of non-required but enriching educational opportunities. See, e.g., Dignan v. Bd. of Educ. of Rumson-Fair-Haven Reg'l High Sch., 71 S.L.D. 336 (faculty advisor for the school newspaper); Dallolio v. Vineland Bd. of Educ., 65 S.L.D. 18 (football coach).

B.

Further, because the BookBinders program is a separate, but constitutionally based, educational program run by the Board outside of the normal school program, it is not subject to the "<u>different</u> instructional certificate" requirement pertinent to traditional, extracurricular programs.

---

[3] Indeed, we acknowledge the argued point that the Legislature has made "assignment to, retention in, dismissal from, and any terms and conditions of employment concerning extracurricular activities" mandatory subjects of negotiations. See L. 1989, c. 269, § 2 (codified at N.J.S.A. 34:13A-23). The position that we considered here is uniquely different from and not subject to the extracurricular label and all that connotes, for the reasons stated herein.

25

Relying on considerations connected with past decisions analyzing whether a teacher could acquire tenure in a separate, even extracurricular, position by examining whether a separate instructional certificate was needed, the Board and the Commissioner urge us to impose such a requirement here. We fail to see that such a requirement has any applicability to the present matter. Such a requirement is sensible for the assessment of whether a teacher is being asked to perform additional duties within the scope of the certificate held by a teacher tenured in the district's regular school programming. Here, the Board concedes that Melnyk's position in the BookBinders program would be tenure eligible if it were filled by a person who was not already serving as an instructor in the district's regular day program. If the additional-certificate requirement were applied here, it would result in imposing a new and additional step for the acquisition of tenure in the BookBinders program only for teachers, like Melnyk, who are already tenured in the regular day education program. We see no basis under the Tenure Act to add a new requirement for the acquisition of tenure in this alternative education program for Melnyk because she already teaches and has acquired tenure in her special education teaching position in the district's regular day instruction, and we decline to import such a requirement from the readily distinguishable context of traditional extracurricular programs.

26

Rather, as <u>Spiewak</u> underscores, it is necessary that a tenure-eligible position carry an instructional certification requirement, but there is no requirement for there to be an additional certification. Applying the lesson of <u>Spiewak</u> and the literal requirements for tenure acquisition in a position, we conclude as a matter of first impression that this alternative education program entailed positions that are eligible for tenure separate and distinct from any considerations of tenure eligibility as to the day-program instruction. In other words, BookBinders positions are tenure eligible for any person who is hired to fill a position requiring an instructional certificate. And tenure eligibility in a BookBinders position must therefore be analyzed purely on the basis of <u>Spiewak</u>'s dictates.

Here, Melnyk's service in the BookBinders program satisfied <u>Spiewak</u>. Her service lasted, even after her one-year break, longer than the requisite time for her to acquire tenure, and she had the specific instructional certificate. She therefore acquired tenure rights to this position outside of her separate right to tenure in her capacity as a special education teacher in the district's regular day program instruction. The BookBinders position held by Melnyk was separately tenure eligible, and her compensation for it could not be reduced without compliance with the procedural protections of the Tenure Act.

## VI.

For the reasons expressed, we reverse the judgment of the Appellate Division and remand to the Commissioner for entry of judgment and relief in favor of petitioner for any reduction in compensation suffered. We note that Melnyk retired after the initiation of this lawsuit and therefore leave to the Commissioner the calculation of appropriate damages.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.